The Mississippi Bar, ("Bar") filed two formal complaints involving separate, unrelated incidents against Joseph W. Gex, ("Gex"). Different Tribunals considered the charges against Gex. The first Tribunal determined that Gex, regarding a note and deed of trust taken on the sale of real property to Jacqueline A. Vidrine, ("Vidrine") violated Rules of Professional Conduct 1.15(b) and 8.4(a), (c), (d). The second Tribunal determined Gex violated conduct rules 1.3, 1.4(a), 1.8(e) and 8.4(c) in the representation of his client, Paul Cromer, ("Cromer"). Gex also engaged in conduct demonstrating dishonesty, fraud, deceit or misrepresentation and conduct prejudicial to the administration of justice. Gex was disbarred by the Tribunal on the Vidrine incident and suspended for one (1) year by the Tribunal that considered the Cromer matter.
Feeling aggrieved, Gex appeals to this Court for consideration of the following issues:
 I. WERE RULES 1.15(b) and 8.4(a), (c), (d) OF THE RULES OF PROFESSIONAL CONDUCT VIOLATED UPON THE FACTS PRESENTED BY CLEAR AND CONVINCING EVIDENCE?
 II. WERE RULES 1.3, 1.4(a), 1.8(e) and 8.4(c) OF THE RULES OF PROFESSIONAL CONDUCT VIOLATED?
 III. DOES THE FAILURE TO ALLOW APPELLANT RIGHT TO CONFRONTATION VIOLATE THE 5th AMENDMENT TO THE U.S. CONSTITUTION?
 IV. DID THE FACTS SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GEX WAS UNFIT TO PRACTICE LAW AS A RESULT OF THE FACTUAL SITUATION?
 V. IS SUSPENSION FROM THE PRACTICE OF LAW FOR A PERIOD OF ONE (1) YEAR A JUSTIFIABLE JUDGMENT BY THE TRIBUNAL?
 VI. MAY THE APPELLANT PRESENT "MITIGATING FACTORS" AT THE SUPREME COURT LEVEL AS PART OF THE DE NOVO REVIEW, AND IF SO, THE SCOPE OF SUCH PROOF BY AFFIDAVIT? Vining v. The Mississippi Bar, 508 So.2d 1047 (Miss. 1987).
This Court, considering both Bar complaints against Gex and all his assigned errors presented therein, finds no merit to any of the issues raised by Gex. Gex violated each of the rules cited by the Tribunals. Although the two incidents resulting in the complaints against Gex, if considered separately, might be found to justify a less severe sanction in the form of a suspension, for example, the combination of these incidents certainly warrants disbarment of Gex.
 FACTS The Vidrine Matter
On November 12, 1991, a Formal Complaint against Gex regarding the "Vidrine" matter was filed before a Complaint Tribunal by the Mississippi Bar. The complaint concerned a real estate transaction between Gex and Vidrine.
On February 10, 1986, Gex sold a parcel of real estate to Jacqueline A. Vidrine for $30,000. Gex received $10,000 in cash and the *Page 1126 
remaining balance of $20,000 was secured by a Promissory Note and Deed of Trust. Vidrine paid monthly installment payments on the balance of the note to the Hancock Bank in Bay St. Louis, Mississippi as agreed and stated in the Promissory Note.
On March 5, 1986, Gex received a loan of $16,002 from the Hancock Bank which was not related to the Vidrine Promissory Note, Deed of Trust and Warranty Deed. Gex executed a Collateral Note in return for the $16,002 loan. He then assigned all of his "right, title and interest" in the Promissory Note executed by Vidrine to the Hancock Bank as collateral for the $16,002 loan.
In May 1987, Vidrine requested that her attorney, Julien K. Byrne, III (Byrne) contact Gex and determine the payoff necessary to satisfy the Promissory Note. Gex mailed a letter to Byrne's secretary, Glenda Downs, stating he would accept $18,000 in satisfaction of Vidrine's promissory note. Vidrine issued and delivered two checks to Byrne totaling $18,000 in accordance with Gex's letter. Vidrine did not know that Gex assigned his right, title and interest in the Promissory Note to Hancock Bank.
After receiving two personal checks totalling $18,000 from Vidrine, in satisfaction of the Promissory Note, Gex executed an Authority to Cancel the Deed of Trust executed by Vidrine. He did not inform Vidrine or Byrne that he had previously assigned all of his right, title and interest in the Deed of Trust to Hancock Bank. Nor did he notify the Hancock Bank that he accepted the $18,000 in satisfaction of the Deed of Trust and Promissory Note executed by Vidrine. Gex did not use the money to satisfy the remaining balance of the $16,002 loan. Instead, Gex used the money to pay income taxes and other personal expenses.
Gex received three extensions between March 30, 1988 and May 21, 1990 to pay the $16,002 loan balance. The Promissory Note executed by Vidrine was listed as security for the original note of $16,002 on each extension. Gex never notified the bank that he accepted an early retirement of Vidrine's note in seeking the extensions.
Jerry D. Heitzmann, Branch Manager of the Hancock Bank, testified that in November 1990 he obtained Vidrine's address from Gex in an effort to collect on the note. Gex never said anything to Heitzmann about the payoff or cancellation of the note and deed of trust. Heitzmann discovered that Vidrine had paid the balance on the note. The Bank filed suit against Gex for his outstanding indebtedness and obtained a judgment which remained unsatisfied at the time of the Tribunal's Opinion and Judgment. The bank viewed Vidrine as an innocent victim and did not foreclose on the property. In addition, Vidrine does not have a clear or marketable title to the land.
Gex admitted he received two checks from Vidrine and deposited them into his personal account to pay his expenses, rather than depositing the money into a trust account. He admitted the bank had an interest in the funds Vidrine paid him. When asked ". . . [I]sn't it true that you are making a representation to Mrs. Vidrine, through her counsel, by executing and tendering this authority to cancel, (the deed of trust) that you had such authority; isn't that correct," Gex replied, "I would think that would be true, yes, sir."
Jeannette Purchner, loan officer at Hancock Bank, testified that she had known Gex for many years and knew he was prone to procrastinate. Gex did not tell her he received money from Vidrine, did not ask the bank for permission to cancel the Deed of Trust and did not inform the bank the deed had been cancelled when he received the loan extensions.
Janet Power, Purchner's successor, testified that upon Purchner's retirement, she received the Gex file. She discussed with Gex having Vidrine make direct payments to the bank since Gex was late with payments. Power stated that when the third extension was granted, Gex failed to mention that the note had been paid and the deed cancelled. Had she known Vidrine's note was already satisfied, it could not have served as collateral on Gex's loan which she would not have extended. *Page 1127 
 The Cromer Matter
Regarding the second Bar complaint against Gex, filed November 13, 1992, the following facts were found by the Complaint Tribunal in its opinion and judgment issued October 21, 1993. Paul Cromer crushed two fingers on September 27, 1983, while unloading oysters from a transport truck owned by Trinity Transport. Cromer hired Gex to file a claim against Trinity and Kenny May of May's Seafood Dock. The complaint was filed in the U.S. District Court for the Southern District of Mississippi on September 21, 1990. On August 13, 1991, a Minute Entry Order was entered which removed the case from the docket because Gex failed to prosecute the claim. An Order to Show Cause was entered January 22, 1991; yet, as the Mississippi Bar points out, no Scheduling Order was submitted under Rule 6(d).
On October 1, 1991, Gex sent Cromer a short letter requesting that Cromer sign a settlement statement and release form so that Gex could settle the claims. Gex represented to Cromer that he settled the claim with the insurance companies for $14,500. Gex would deduct Cromer's medical expenses and Gex's loan and attorney fees leaving Cromer with $9,747. Cromer agreed to settle the claim and returned the statement and release forms to Gex.
On November 14, 1991, after receiving no compensation for six weeks, Cromer filed a complaint with the Mississippi Bar primarily asserting that Gex was negligent in handling the case since he would not return phone calls regarding the case.
On November 25, 1991, $4,880 was deposited into Cromer's account at Merchants Bank and Trust Company. The record also reflects that Gex loaned Cromer money because settlement of the case was delayed. Gex deposited a check of $136 into Cromer's account, which bounced. Gex deposited "advances" into Cromer's account on which Cromer wrote checks based on the assumption that the money was in his account. These checks also bounced costing Cromer money for insufficient funds charges.
On March 9, 1992, Cromer signed a letter and absolute release form in connection with the legal negligence claim against Gex. The release stated that due to oversight or negligence by Gex an offer of settlement was conveyed to Cromer to which he agreed. Gex failed to conclude the settlement and the statute of limitations expired. The carriers, State Farm and Nationwide, denied the claims.
 Standard of Review
This Court has held that it "has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys." Rule 1(a), Rules of Discipline. Mathes v.Mississippi Bar, 637 So.2d 840, 846 (Miss. 1994), citingMississippi Bar v. Mathis, 620 So.2d 1213, 1218 (Miss. 1993);Underwood v. Mississippi Bar, 618 So.2d 64, 67 (Miss. 1993);Mississippi State Bar v. Blackmon, 600 So.2d 166, 171 (Miss. 1992). In disciplinary matters before the Bar, this Court examines the evidence de novo "on a case by case basis, sitting as triers of fact and no substantial evidence or manifest error rule shields the Tribunal from scrutiny." Attorney L.S. v.Mississippi Bar, 649 So.2d 810, 812 (Miss. 1994), citingAttorney W.L. v. Mississippi Bar, 621 So.2d 235 (Miss. 1993); Rule 9.4, Rules of Discipline for the Mississippi State Bar. The Bar has the burden to "show by clear and convincing evidence that an attorney's actions constitute professional misconduct." Id.,
621 So.2d at 237; Attorney Q. v. Mississippi State Bar,587 So.2d 228, 232 (Miss. 1991).
 DISCUSSION
Counsel for Gex in his "Vidrine" brief cites no authority for any issue. Gex does not argue any of the issues he lists as assignments for review. He cites no criteria to adjudicate the issues, rather he recalls facts and testimony with no application of case law or the rules in question. Gex merely presents his general disagreement with the Tribunal's findings. This Court has stated it has no obligation to consider any assignments of error unsupported by legal authority and unaddressed on appeal. Matterof Estate of Mason v. Fort, 616 So.2d 322, 327 (Miss. 1993).See also, James W. Sessums *Page 1128 Timber Company, Inc. v. McDaniel, 635 So.2d 875, 879 (Miss. 1994). Gex apparently relies upon this Court's de novo review as a reason for his failure to support the issues he submits. Nevertheless, a review of this Court's caselaw establishes that Gex's arguments are without merit.
I. WERE RULES 1.15(b) and 8.4(a), (c), (d) OF THE RULES OF PROFESSIONAL CONDUCT VIOLATED UPON THE FACTS PRESENTED BY CLEAR AND CONVINCING EVIDENCE?
Counsel for Gex has attempted to distinguish this case by pointing out that Gex was not acting in an attorney-client relationship in transacting business with Vidrine. This Court's opinion in Haimes v. Mississippi Bar, 601 So.2d 851, 855 (Miss. 1992), easily disposes of this position. Haimes argued there was no attorney-client relationship and his duties as guardian did not involve the practice of law. This Court disagreed, stating even if no attorney-client relationship existed, "his conduct would still be subject to discipline." Id. In addition, the Court noted the Preamble to the Rules of Discipline for the State Bar, which provides:
 Acts or omissions by an attorney, individually or in concert with any other person or persons, which violate the Attorney's Oath of Office or the Code of Professional Responsibility . . . shall constitute misconduct and shall be grounds for discipline whether or not the acts or omissions occurred in the course of an attorney-client relationship.
Id. (emphasis added). Therefore, there is no merit to this assertion.
Addressing the rules in question, Rule 1.15 concerns "Safekeeping Property." Section (b) reads:
 Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
Haimes also provides direction on this issue. Haimes was appointed guardian of Newton Felix Warner, a declared non compos mentis. Haimes handled all of Warner's affairs for fifteen years, for which he received guardian and attorney fees. During this period, on two occasions Haimes withdrew sums of money from the guardianship account without court approval. He used these funds largely toward his activities with the Mississippi Harness Racing Association, and secondly, to pay himself additional "fees" for services in connection with the guardianship account. Id. at 852. Warner's guardian ad litem filed suit against Haimes to have him removed as guardian and to provide restitution for the unauthorized disbursements. The Bar's complaint stated Haimes violated, in particular, Rules 1.15(a, b) and 8.4(a), (c), (d). The Tribunal agreed and, noting Haimes had prior disciplinary actions, imposed disbarment. Id.
This Court opined that Haimes committed the "cardinal sin" of mishandling a client's money, and emphasized that an attorney "must not comingle a client's funds with his own, regardless of motive. When a lawyer mixes a client's money with his own, an appearance of gross impropriety arises even if the transaction is otherwise benign." Id. at 854. Disbarment was affirmed.
The case at bar is closely analogous to Haimes. The facts clearly illustrate that Gex did not properly handle Vidrine's payoff of the loan and promised cancellation of the deed of trust. It is obvious Gex procrastinated in paying off the loan, and in providing other collateral in an expedient manner to give Vidrine clear title. The end result, regardless of the lack of an attorney-client relationship per se, is that Vidrine was unjustly held in default of a loan she believed she had extinguished. Vidrine does not have clear marketable title to the property and cannot sell the property until the cloud of title is removed. Gex testified that he was in the process of paying off the note to make the title free and clear but, same was not *Page 1129 
completed at the time of the Tribunal hearing.
Moreover, the money did not belong to Gex since he assigned his right, title and interest in Vidrine's note to Hancock Bank. Yet, Gex used that note as collateral to secure another completely separate loan from the bank. On cross-examination, Gex admitted he understood real estate transactions and their significance since he handled real estate accounts. The evidence is clear and convincing that Gex violated Rule 1.15(b). Rule 8.4 reads in part as follows:
It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 * * * * * *
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice;
The Court in Haimes determined that Haimes violated 8.4(a), (c), (d), citing its earlier decision in Reid v. MississippiState Bar, 586 So.2d 786 (Miss. 1991), wherein it was stated:
 There can be no legal profession in the absence of scrupulous honesty by attorneys with other people's money. Public confidence here is vital. There may be worse sins, but the ultimate wrong of a lawyer to his profession is to divert clients' and third parties' funds entrusted to him to an unauthorized use. A lawyer guilty of such conduct exhibits a character trait totally at odds with the purposes, ideals and objectives of our profession.
 If creditors are hounding a lawyer, he can take bankruptcy. If he is hungry, he can go to the Salvation Army. But mishandling other peoples' money is a thought he should never entertain.
Haimes, 601 So.2d at 855, quoting Reid, 586 So.2d at 788. Haimes was disbarred.
In Underwood v. Mississippi Bar, 618 So.2d 64 (Miss. 1993), the Court found that Underwood lied to his clients concerning the settlement of their insurance claims. The Court stated that his misrepresentation to his clients was not "a slight misrepresentation once or twice, it was activity over a two year period which continually became worse. It was not mere negligence; it involved intentional misrepresentation to cover his negligence." Id. at 67.
Gex was not honest with Vidrine or her attorney. He misrepresented his financial standing and did nothing to make Hancock Bank aware of the situation. Nor did he tell bank representatives that the note was paid when he knew that information was vital to the legality of the status of the loan and its collateral. The evidence is clear and convincing that Gex also violated 8.4(a), (c), (d).
II. WERE RULES 1.3, 1.4(a), 1.8(e), and 8.4(c) OF THE RULES OF PROFESSIONAL CONDUCT VIOLATED?
In connection with his "representation" of Cromer, and the charges brought as a result thereof, Gex has not offered any particular authority to support that he did not violate the cited rules. This Court has held there is no obligation to consider any assignment of error unsupported and unaddressed in a party's submitted brief(s). Matter of Estate of Mason v. Fort, 616 So.2d at 327. See also, James W. Sessums Timber Company, Inc. v.McDaniel, 635 So.2d at 879. However, because bar matters can be considered "family matters," Gex should perhaps be heard on these issues.
 Rule 1.3: "A lawyer shall act with reasonable diligence and promptness in representing a client."
The Comment to the rule states that DR 6-101(A) admonishes a lawyer not to "neglect a legal matter entrusted to him," while EC 6-4 states a lawyer should "give appropriate attention to his legal work." Based upon this criteria, Gex did not act with "reasonable diligence and promptness" in his representation of Cromer. Gex never acted to adjudicate the case or to provide a settlement for Cromer. The facts illustrate that even after Cromer returned the settlement statement and releases, six weeks passed with no communication from Gex. Cromer then filed his complaint with the Bar. Faced with the Bar *Page 1130 
action, it was approximately five more months until Cromer settled with the law firm.
In a March 1992 meeting, Cromer was told that Gex failed to conclude the settlement and the statute of limitations had expired. Perhaps more damaging to Gex is his admission that he allowed the statute to run and did not tell Cromer, and that the settlement and releases he prepared and sent to Cromer were not offers of settlement from the defendants. Gex violated Rule 1.3.
 Rule 1.4(a): "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."
The case of Stegall v. The Mississippi Bar, 618 So.2d 1291
(Miss. 1993), affords guidance on this issue. In Stegall, the attorney, on two different counts before the Tribunal and this Court, refused to return telephone calls or case materials that would aid the defendants seeking post-conviction relief. In one instance, the client resorted to filing his action pro se
before this Court because Stegall failed to carry out his agreed representation. Id. at 1295. In the case at bar, Gex did not keep Cromer "reasonably informed," most notably refusing to return Cromer's phone calls for six weeks. Moreover, what communications Cromer did receive from Gex concerning the case were incorrect until Cromer filed a complaint with the Mississippi Bar and the actual status of his case was revealed. Gex violated rule 1.4(a).
 Rule 1.8(e): "A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of a matter, and (2) a lawyer representing an indigent client, may pay court costs and expenses of litigation on behalf of the client."
The Tribunal found that Gex loaned money to Cromer because of the delay in settling the case. Gex stated in his deposition that "Cromer was basically living with me" and when asked from which account he transferred money to Cromer's account, Gex replied "Well, it probably would have been our personal accounts or business, either one, whichever one I had the money in." It appears Cromer was hard pressed for money. Gex has violated rule 1.8(e) in providing such financial assistance to Cromer.
 Rule 8.4(c): "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, deceit, and misrepresentation. . . ."
In Underwood v. Mississippi Bar, 618 So.2d 64 (Miss. 1993), Underwood allegedly violated rule 8.4(c). Underwood told his clients that he was working on their case and that a court date had been set. Underwood told his clients that the insurance company "would have an agent present with a settlement check awaiting receipt of the executed release forms." Id. at 65. Underwood then told his clients that he had received the check and it was being forwarded to them by mail. When the check did not arrive his client telephoned him and Underwood said the check should be received by a certain date. Id. The Court determined that "Underwood knowingly and intentionally lied to his clients. His was not a slight misrepresentation. . . . It was not mere negligence; it involved intentional misrepresentation to cover his negligence." Id. at 67. The Court expressed the need to deter attorneys from lying to their clients and noted that while Underwood lied to his clients, he also prepared "release forms for them to sign when there was no settlement." Id. Underwood was suspended for one year.
It is clear and convincing that Gex did not tell Cromer the truth about Cromer's case. There were no actual offers of settlement or releases. In paying Cromer money that supposedly came from the insurance companies, Gex actively misrepresented matters to his client. Like Underwood, Gex also violated rule 8.4(c).
III. DOES THE FAILURE TO ALLOW APPELLANT RIGHT TO CONFRONTATION VIOLATE THE 5th AMENDMENT TO THE U.S. CONSTITUTION?
Gex argues that he was denied his Fifth and Fourteenth Amendment rights as *Page 1131 
guaranteed by the U.S. Constitution because he could not confront Cromer at the Tribunal hearing on Cromer's case. He citesNetterville v. Mississippi State Bar, 397 So.2d 878 (Miss. 1981), (holding that while the investigatory hearing is not a full evidentiary hearing, it nevertheless "must be expanded" to permit the accused attorney to cross examine witnesses) in support. The Bar argues that Rule 5.6 of the Rules of Discipline would show that "Cromer is not a party to the proceedings." The Bar correctly points out that Gex's counsel "acknowledged that if this case were to be decided as a matter of law," Cromer's presence would not be necessary. Because the material facts are not in dispute, the Tribunal was correct to issue partial summary judgment in favor of the Bar. This issue is without merit.
IV. DID THE FACTS SHOW BY CLEAR AND CONVINCING EVIDENCE THAT GEX WAS UNFIT TO PRACTICE LAW AS A RESULT OF THE FACTUAL SITUATION?
Gex maintains that the facts do not warrant disbarment; yet, he fails to offer any contrary facts to what this Court finds to constitute clear and convincing evidence of his guilt. The Court considers the following factors when reviewing appropriate sanctions for misconduct:
 (1) Nature of the misconduct involved;
 (2) Need to deter similar misconduct;
 (3) Preservation of dignity and reputation of the legal profession;
 (4) Protection of the public;
 (5) Sanctions imposed in similar cases.
Mathes v. Mississippi Bar, 637 So.2d at 846-47, citing Stegallv. The Mississippi Bar Association, 618 So.2d at 1294. TheMathes Court also consulted ABA Standards for Imposing LawyerSanctions as "helpful guidelines" in considering:
 (1) the duty violated;
 (2) the lawyer's mental state;
 (3) the potential or actual injury caused by the lawyer's misconduct;
 (4) the existence of aggravating or mitigating factors.
Mathes, 637 So.2d at 847. See also, Mississippi Bar v.Strauss, 601 So.2d 840, 845 (Miss. 1992); Mississippi State Barv. Blackmon, 600 So.2d 166, 173 (Miss. 1992). The ABA standards include the following recommended sanctions, as appropriate:
 § 5.11 Disbarment is generally appropriate when: (b) a lawyer engages in any intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
 § 6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the Court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on a legal proceeding.
 § 6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
Mathis, 620 So.2d at 1225, citing ABA Standards For ImposingLawyer Sanctions (1986).
In Mathis, the Court found counsel misrepresented to his clients and the lower court the existence of an autopsy, conduct involving deceit, fraud, dishonesty and the concealment of discovery evidence. Id. at 1222-25. Mathis was suspended for one year from practicing law. However, in addition to our decision in Haimes, the Court has ordered disbarment inCulpepper v. Mississippi State Bar, 588 So.2d 413 (Miss. 1991), and Barfield v. Mississippi State Bar Ass'n, 547 So.2d 46
(Miss. 1989), where conduct involving dishonesty, fraud, deceit and misrepresentations have also been at issue.
Gex argues that the "alleged violation" of the cited rules of misconduct "could reasonably be justified by a preponderance of the evidence before the Tribunal" and therefore, does not agree that the clear and convincing *Page 1132 
standard is entirely appropriate for adjudication. Gex believes the Tribunal "overreacted and was over zealous" in suspending him for one year because there was no victim in the controversy. Our review of the facts underlying both complaints against Gex leads us to the inescapable conclusion that disbarment is not "unwarranted and overly reactive." When both of these close-in-time incidents are considered together, disbarment is most appropriate. Gex misused Vidrine's money and misrepresented the status of the deed of trust and loan information to both Vidrine and the bank.
Regarding the "Cromer" incident, Gex admitted that he allowed the statute to run but did not so inform his client; despite his tendering settlement offers and releases to Cromer, he had not received any such offers of settlement from either defendant and he improperly attempted to resolve Cromer's case by paying Cromer with money from his own personal funds.
Not only are lawyers expected by their clients to act as professionals but they affirm this duty to the courts of this state when they take their oaths on becoming attorneys. The dignity and reputation of the legal profession takes another hit when society learns of the irresponsible and unscrupulous conduct suffered at the hands of attorneys like Gex. Public protection becomes paramount and sanctions imposed in earlier, similar cases afford this Court guidance in reviewing the sanctions imposed by the Complaint Tribunals.
Finally, Gex presents no mitigating factors in either case in his defense before this Court. On the other hand, this Court has not hesitated to affirm the Complaint Tribunal's consideration of aggravating factors in determining the appropriate "degree of discipline to impose." Haimes, 601 So.2d at 854, citingCulpepper v. Mississippi State Bar, 588 So.2d at 421;Mississippi State Bar v. Smith, 577 So.2d 1249, 1251 (Miss. 1991); Foote v. Mississippi State Bar Ass'n, 517 So.2d 561, 565 (Miss. 1987). The Tribunal noted aggravating factors existed according to Rules of Discipline 9.22(b) because Gex was dishonest or had a selfish motive, and under 9.22(c), because Gex exhibited a pattern of misconduct in these two matters over a period of two-and-a-half years. The Tribunal further considered 9.22(g), for Gex's continued refusal to acknowledge his misconduct. Finally, the Tribunal noted that Vidrine was an innocent third party who relied upon Gex to convey valid title and release a lien. Consistent with this Court's rulings upon denovo review of actions of disbarment and the appropriate ABA standards, the Tribunal properly imposed disbarment as the appropriate sanction for Gex's misconduct.
V. IS SUSPENSION FROM THE PRACTICE OF LAW FOR A PERIOD OF ONE (1) YEAR A JUSTIFIABLE JUDGMENT BY THE TRIBUNAL?
VI. MAY THE APPELLANT PRESENT "MITIGATING FACTORS" AT THE SUPREME COURT LEVEL AS PART OF THE DE NOVO REVIEW, AND IF SO, THE SCOPE OF SUCH PROOF BY AFFIDAVIT? Vining v. The Mississippi Bar, 508 So.2d 1047 (Miss. 1987).
Gex argues this Court, sitting in de novo review, should vacate the Tribunal's ruling and only allow a thirty (30) day suspension with automatic reinstatement and a public remand as sanctions against him. He cites Broome v. Mississippi Bar,603 So.2d 349 (Miss. 1992) and Vining v. Mississippi State BarAssociation, 508 So.2d 1047 (Miss. 1987).
The Mississippi Bar argues deference is given to the findings of the Tribunal because it observes the demeanor and attitude of the attorney and witnesses in weighing the evidence. The Barcites Vining and Mississippi State Bar v. Strickland,492 So.2d 567, 571 (Miss. 1986).
Gex's argument must fail for several reasons. First, the facts in Broome provide a stark contrast to those surrounding the complaints against Gex. In 1982 Broome was privately reprimanded by the Bar for representing two clients with conflicting interests. Later, Broome represented a client who was in an automobile accident in Memphis, Tennessee on June 14, 1986. Broome corresponded with the attorneys from GEICO on March 20, 1987 and received an offer of *Page 1133 
settlement in April. Broome's client rejected the offer.
In November 1988, Broome transferred the case to Ralph Chapman who practiced law in Clarksdale, Mississippi. Chapman discovered that GEICO had written Broome advising him that the statute expired and all offers of settlement were therefor withdrawn. Broome admitted he failed to recognize or remember the one year statute of limitations in Tennessee and submitted it was an oversight, not incompetence on his part. The Tribunal found Broome acted unethically and suspended him for thirty (30) days.Broome v. Mississippi Bar, 603 So.2d at 350-51. In contrast, Gex failed to act on behalf of his client, Cromer, at all.
Second, Broom argued, as does Gex, that this Court's decision in Vining v. Mississippi State Bar Association supports only a public reprimand in his case. In Vining, the attorney accepted employment, told his client he was handling matters, then allowed the statute of limitations to run. Vining presented a host of mitigating factors such as his declining personal health, a family member's health, and personal distress. Id. at 1049. This Court determined in Vining that a 120 day suspension was not appropriate under those facts. Id. The Court determined Broome failed to prove mitigating evidence of any magnitude comparable to that in Vining which might justify a reversal of the imposed sanction. The Complaint Tribunal's decision was affirmed.
In Hall v. Mississippi Bar, 631 So.2d 120 (Miss. 1993), the Court affirmed Hall's sixty (60) day suspension from the practice of law. Hall was representing a client who had been badly injured in an automobile accident. Settlement agreements were negotiated. The Bar complaint stated Hall was difficult to contact and to communicate with after the settlement was reached. Hall's client discharged him and obtained other counsel who also could not communicate with Hall. Hall's clients finally reached a settlement approximately two years later. However, Hall presented a multitude of evidence which illustrated mitigating factors in his defense, most of which involved the breakdown of his marriage with its resulting legal trauma. Based upon those factors, the Court did not allow a harsher judgment. Gex has no basis for dispute on this meritless issue.
 CONCLUSION
Gex violated each of the Rules of Discipline as alleged by the Bar and established by clear and convincing evidence by the Tribunals. The actions taken by the two separate Tribunals were certainly justified, reasonable and normally would be separately upheld by this Court. However, when this Court looks at these two matters together, occurring over a relatively short period of time and thus comprising a clear pattern of misconduct, together with the lack of any explanation, much less justification for counsel's actions, there can be no doubt that disbarment in the case sub judice is absolutely appropriate. Gex is hereby disbarred.
JUDGMENT OF THE COMPLAINT TRIBUNAL'S DISBARMENT OF JOSEPH W.GEX IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.