708 So.2d 1372 (1998)
The MISSISSIPPI BAR
v.
Kenneth A. PELS, Sr.
No. 96-BD-00106-SCT.
Supreme Court of Mississippi.
March 26, 1998.
*1373 J. David Wynne, Jackson, for Appellant.
Kenneth A. Pels, Sr., Gaithersburg, pro se.
En Banc.
BANKS, Justice, for the Court:
¶ 1. This matter involves reciprocal discipline. Kenneth Pels was disbarred in the District of Columbia, and thereafter a Formal Complaint was filed by the Mississippi Bar seeking sanctions against Pels pursuant to Rule 13 of the Rules of Discipline. After a thorough review of the record we decline to impose identical punishment, and instead conclude that Pels should receive a thirty-day suspension.

I.
¶ 2. The facts of this case are largely undisputed and are reflected in the reported decision of the District of Columbia Court of Appeals disbarring Kenneth Pels. In re Pels, 653 A.2d 388, 389-92 (D.C. 1995). In summary, that court accepted the findings of a three-member Hearing Committee (Committee) and a majority of the Board on Professional Responsibility (Board) that Pels had recklessly misappropriated his client's funds.[1] Pels had placed settlement funds in an account used both for business operations and for personal expenses, and then allowed the balance to drop below the amount needed to satisfy third party claims against the client's funds. Id. at 393-94. Three considerations led the court to conclude that Pels' conduct surpassed simple negligence: (1) the length of time  nearly a year  over which the indiscriminate mingling of personal and client funds took place; (2) the failure to maintain contemporaneous records accounting for the flow of client funds; and (3) the fact that after Pels negotiated a $432.00 savings with one of the third party medical providers, he failed to accurately and definitively account for the expenses he claims to have offset with these client funds. Id. at 395-96.
¶ 3. The court reluctantly disbarred Pels, citing the per se rule of In re Addams, 579 A.2d 190 (D.C. 1990). The court believed itself bound by the pronouncement in Addams that "`in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence.'" Pels, 653 A.2d at 388-89 (quoting Addams, 579 A.2d at 191).[2]
¶ 4. On February 12, 1996, the Mississippi Bar initiated the present action by filing a Formal Complaint against Pels seeking reciprocal discipline pursuant to Rule 13 of the Rules of Discipline for the Mississippi State Bar. Pels filed a Response to Complaint on March 18, 1996. While the case was pending, this Court received from Pels a copy of an Amici Curiae Brief from Pels' case before the United States Court of Appeals for the District of Columbia Circuit. The federal court was unsure whether it should disbar *1374 Pels on the basis of the action in the D.C. state court, and appointed amici to clarify whether identical punishment was appropriate. Pels requested this Court to consider his sanction in light of the conclusions contained in the amici brief. Because we conduct a de novo review in matters of attorney discipline, we indulged the Respondent's request.

II.
¶ 5. The Supreme Court of Mississippi has exclusive and inherent jurisdiction in bar disciplinary matters. Mississippi Bar v. Alexander, 669 So.2d 40, 41 (Miss. 1996); Asher v. Mississippi Bar, 661 So.2d 722, 727 (Miss. 1995); Gex v. Mississippi Bar, 656 So.2d 1124, 1127 (Miss. 1995); R. Discipline Miss. State Bar 1(a). This Court conducts a de novo review in matters of attorney discipline. Alexander, 669 So.2d at 41; Mississippi Bar v. Attorney R., 649 So.2d 820, 824 (Miss. 1995); Gex, 656 So.2d at 1127; R. Discipline Miss. State Bar 9.4. Additionally, the Court must decide each disciplinary case on its own unique merits. Fougerousse v. Mississippi State Bar Ass'n, 563 So.2d 1363, 1366 (Miss. 1990).
¶ 6. The burden is usually on the Mississippi Bar to show by clear and convincing evidence that an attorney's actions constitute professional misconduct. Alexander, 669 So.2d at 41; Goodsell v. The Mississippi Bar, 667 So.2d 7, 9 (Miss. 1996) (citing Terrell v. Mississippi Bar, 635 So.2d 1377, 1384 (Miss. 1994)). In the instant case, however, the Mississippi Bar has filed this complaint pursuant to Rule 13 of the Rules of Discipline for the Mississippi State Bar. That rule states:
When an attorney should be subjected to disciplinary sanctions in another jurisdiction, such sanction shall be grounds for disciplinary action in this state, and certification of such sanction by the appropriate authority of such jurisdiction to the Executive Director of the Bar or to the Court, shall be conclusive evidence of the guilt of the offense or unprofessional conduct on which said sanction was ordered, and it will not be necessary to prove the grounds for such offense in the disciplinary proceeding in this state. The sole issue to be determined in the disciplinary proceeding in this state shall be the extent of the final discipline to be imposed on the attorney, which may be less or more severe than the discipline imposed by the other jurisdiction.

R. Discipline Miss. State Bar 13 (emphasis added).
¶ 7. This Court has stated that "requests for discipline based on sanctions imposed by other jurisdictions shall be presented to this Court with the sole issue to be the extent of final discipline to be imposed on the attorney in this state." Mississippi Bar v. Strauss, 601 So.2d 840, 844 (Miss. 1992). Thus, "there is no need for any fact-finding in this state as to the offense." Id. As a result of the respondent's disbarment by the District of Columbia, it has been established under Rule 13 that Pels' actions constitute conduct unbecoming of an attorney. Therefore, the sole issue before the Court is the extent of the final discipline to be imposed upon Pels, which may be less or more severe than the discipline imposed by the District of Columbia.
¶ 8. In determining an appropriate sanction, however, it is inherent within the language of Rule 13 that this Court is not bound by those findings of the foreign jurisdiction which go to the sanction imposed. An attorney "`who is subject to reciprocal discipline may ... offer any mitigating factors which he thinks serve to diminish his culpability and therefore diminish the necessity for, or severity of, sanctions to be imposed by this Court.'" Mississippi Bar v. Felton, 699 So.2d 949, 952 (Miss. 1997) (quoting Strauss, 601 So.2d at 844). In the present case, the District of Columbia Court of Appeals adopted the finding of the Committee and the Board majority that Pels acted recklessly in handling his client's affairs. This finding forced that court to disbar Pels as dictated by Addams, a result which the *1375 court admitted was "harsh and even unjust." Pels, 653 A.2d at 398. This Court is not bound by the per se rule of Addams, or by its distinction between negligent and reckless misappropriation. We instead approach the issue of an appropriate sanction under our own case law, which permits us to place either more or less weight on the mitigating circumstances of the individual case.
¶ 9. In Mississippi State Bar Ass'n v. A Mississippi Attorney, 489 So.2d 1081, 1083-84 (Miss. 1986), this Court announced a list of factors which should be considered when imposing discipline including but not limited to the following:
(1) the nature of the misconduct involved;
(2) the need to deter similar misconduct;
(3) the preservation of the dignity and reputation of the legal profession;
(4) the protection of the public; and
(5) sanctions imposed in similar cases.
See also Alexander, 669 So.2d at 42; Attorney R., 649 So.2d at 824-25. Another set of criteria which this Court considers when determining sanctions for misconduct originates from the American Bar Association's guidelines, specifically Standard 3.0 which contemplates:
(1) the duty violated;
(2) the lawyer's mental state; and
(3) the actual or potential injury resulting from the misconduct, and the existence of aggravating or mitigating factors.
Alexander, 669 So.2d at 42; L.S. v. Mississippi Bar, 649 So.2d 810, 815 (Miss. 1994) (quoting Mississippi Bar v. Attorney ST, 621 So.2d 229, 233 (Miss. 1993)).
¶ 10. We recognize the seriousness of commingling personal funds with those of the client. We are considerably persuaded in the present case, however, by the observations of the amici curiae appointed by the United States Court of Appeals for the District of Columbia Circuit. They note that the record reveals no evidence that Pels engaged in any dishonesty, misrepresentation to his client, lying to the disciplinary authorities, or systematic diversion of his client's funds for personal purposes. Conduct of this egregious nature has been present in virtually all misappropriation cases where this Court has concluded that disbarment was necessary. See, e.g., Clark v. Mississippi State Bar Ass'n, 471 So.2d 352, 354 (Miss. 1985) (attorney withdrew and spent funds from conservatorship's savings account then filed reports reflecting balance in account when no account existed); Gex, 656 So.2d at 1125-26 (attorney misrepresented his authority to cancel deed of trust in return for payoff when in fact he had assigned his interest in the deed to a third party; he then received and used the payoff funds for personal expenses); Haimes v. Mississippi Bar, 601 So.2d 851, 852-53 (Miss. 1992) (attorney transferred $5000.00 belonging to guardianship of incompetent to personal account and paid himself unauthorized "fees" for services rendered).
¶ 11. The amici note that within days of receiving a settlement check, Pels sent his client the full amount to which she was potentially entitled under the original retainer agreement. See Pels, 653 A.2d at 390. He voluntarily waived $300.00 of his fee and $500.00 of his administrative costs because he apparently thought that would be fair. Id. After paying two of the medical care providers promptly, Pels delayed payments to the two additional providers until he was satisfied that their charges were not duplicative or excessive. If he had not proceeded in such a careful manner and instead had paid promptly the full sums requested by these two providers, Pels probably would not have been subject to the disciplinary proceedings that led inexorably to his disbarment. Moreover, despite his commingling of funds and transfers among various accounts, there is no serious question but that he had at all times both the intention to honor his obligations to his client and the funds with which to do that.
¶ 12. The amici observe that "Pels' record of representing this client over a period of several years reflects a professionalism and *1376 generosity seriously at odds with the findings here of reckless misappropriation." We agree. Pels represented this client on several matters and provided her with a substantial amount of free legal services; he gave her more than she was entitled to from the settlement amount; he incurred substantial expenses for which he did not seek reimbursement; and he kept her currently informed regarding the activities he was undertaking on her behalf. Neither the client, Bar Counsel, the Committee, the Board or the court which disbarred Pels questioned the quality of the legal services rendered by Pels to this client. On one of the matters in which Pels represented this client, she received a recovery of $2000.00 with no deductions for Pels' costs.[3]Id. at 397.
¶ 13. Additionally, Pels had sent his client a letter before any dispute arose between the parties, in which he expressly informed her that there were "outstanding costs on your account" and that "those past non-waived costs will be adjusted into your account upon completing the adjusted medical charges." Although not even mentioned by the District of Columbia Court of Appeals, this letter notified the client of Pels' intention to use any amount saved through his negotiations with the medical provider to offset his considerable unwaived past expenses. It also informed the client that there would be "small additional costs associated with the finalization of your account."[4] The client treated this letter as a "joke" and did not respond. Pels should not have taken his client's lack of response to this letter as consent to the application of the unexpended $432.00 to his expenses or resorted to what the District of Columbia disciplinary officials characterized as "self-help." Id. at 393. This letter, however, sheds light on Pels' state of mind and his honestly held belief  however negligent it might have been  that he was entitled to do what he did with the $432.00.
¶ 14. Before his entry into private practice, Pels served as a Department of Justice lawyer for approximately twenty-five years. He has no disciplinary record. His current troubles arise out of a single case, which was the first personal injury suit he had ever handled. He undertook the case only a few days after he joined a law firm, and it represents the first time that he had controlled the funds of a private client. In regard to the actual injury resulting from Pels' misconduct, we agree with those members of the Board who voted to stay Pels' disbarment when they observed that Pels "waived collection of some funds he had been entitled to receive ... it can be said that, overall, the client was not significantly disadvantaged nor ... the attorney unjustly enriched by his `self-help.'" See id. at 398 n. 17.
¶ 15. Pels has demonstrated that he sincerely regrets his misconduct and has taken measures to educate himself in lawyer-client relationships. In light of the totality of circumstances in the present case, we conclude that the purposes of attorney discipline  preservation of the dignity and reputation of the legal profession and the protection of the public  are properly served by a thirty-day suspension. See Haimes, 601 So.2d at 854 ("primary purpose of disciplinary action is to vindicate the reputation of the bar in the eyes of the public"). The suspension shall begin upon the issuance of this opinion, and *1377 end thirty days thereafter with his automatic reinstatement.
¶ 16. KENNETH A. PELS, SR., IS HEREBY SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF THIRTY (30) DAYS, EFFECTIVE THIS DATE, AND SHALL BE AUTOMATICALLY REINSTATED AT THE END OF THE THIRTY (30) DAY SUSPENSION PERIOD.
PRATHER, C.J., SULLIVAN and PITTMAN, P.JJ., and McRAE, JAMES L. ROBERTS, Jr., SMITH, MILLS and WALLER, JJ., concur.
NOTES
[1] One member of the three-member Committee dissented to the finding of recklessness. Four members of the nine-member Board dissented, concluding that Pels' conduct involved no more than simple negligence and thus warranted suspension. Pels, 653 A.2d at 389.
[2] The recommendations of the Committee and the Board as to the appropriate sanction also reveal reservations about the appropriateness of disbarring Pels for his actions. None of the nine members of the Board thought that complete disbarment was an appropriate sanction. Of the five Board members who recommended disbarment, three opined that the circumstances called for a stay of the disbarment as to all but a three-month period of suspension. Pels, 653 A.2d at 389. The other two stated that while they considered disbarment "unjust," they were bound by the controlling precedent of Addams.
[3] Unfortunately, his client did not appreciate his services or understand that she remained liable under the retainer agreement for expenses indisputably incurred by Pels on her behalf. Accordingly, she filed a complaint with the Bar after receiving dunning letters from one of the medical providers even though she knew Pels had been negotiating with this provider to reduce his charges.
[4] The dissenting opinion of the Board states that Pels, in his original distribution arrangement with this client, had underestimated by a substantial amount his approximate administrative and miscellaneous expenses. The record indicated that expenses incurred totaled $1810.00, even after $500.00 had been waived. The dissent notes that "[i]ronically, had Respondent not waived any costs, and had he included the total costs of $1810.00 in the distribution arrangement, [the client's] portion of the distribution arrangement would have been diminished by that amount. But, in his efforts to lend a helping hand, his fingers were chewed off."