RANDOLPH, Justice,
for the Court.
¶ 1. This attorney disciplinary proceeding began when attorney Frank H. Shaw, Jr., submitted detailed information to the Mississippi Bar regarding advancements which he made to clients. An investigation began, resulting in a formal Complaint being filed by the Mississippi Bar on January 17, 2003, alleging that Shaw violated Rules 1.8 and 8.4 of the Mississippi Rules of Professional Conduct. Shaw filed a Response, pled affirmative matters and requested a formal hearing before a Tribunal. Subsequent to a hearing, where the only witness who testified was Shaw, the Tribunal issued a Judgment granting a directed verdict dismissing all claims under M.R.P.C. 8.4(d) and also issued a Memorandum Opinion on the remaining issues before the Complaint Tribunal. The Tribunal unanimously found, by clear and convincing evidence, that Shaw violated M.R.P.C. 1.8(e). The Tribunal unanimously found that a thirty-day suspension was the appropriate sanction for these violations. The Mississippi Bar appeals from this ruling.
FACTS
¶ 2. The facts are not in dispute. Shaw engaged in a practice of advancing living and other expenses to his clients. Shaw gave advances to approximately 67 clients, thirteen of whom received advances within the first sixty days of representation. Of these thirteen, six of the advances were for initial medical evaluations and seven were for living expenses. Twenty-six individuals received advances exceeding $1500 in which no ex parte application for permission to the Standing Committee on Ethics of the Mississippi Bar was made. The advances were for utilities, food, rent, travel and medical expenses. Some of these advances were made after settlements were reached, but before settlement documents were signed and/or before receipt of the settlement funds. Shaw testified these advances were only made after a due diligence inquiry and his belief that his clients were in dire and necessitous circumstances warranting financial assistance. Shaw did not report any advances ■ made to clients. The advances ranged from as low as $20.00 to one client to as high as $30,410.00 to another client over a period of 30 months. By way of example the advances included:
$400 to client’s automobile finance company to delay repossession of his vehicle.
$215.15 to client’s drug store for medications, and for travel expenses to see a doctor.
$20.00 to client to buy personal hygiene items.
$25.00 to client for travel expenses for a medical evaluation.
$600.00 to client after his Workers’ Compensation check was overdue several days.
$500.00 to client for household bills.
$550.00 to client for a car payment, rent and medical expenses.
$400.00 to client after a favorable Social Security disability hearing, but before the date of the judge’s written decision.
$1200.00 to client for family living expenses, $1000.00 of which was paid three weeks after settlement confirmation, but one week before the settlement check arrived for distribution.
$400.00 to client after parties verbally agreed to settle, but before settlement money was distributed.
¶ 3. The genesis of this Complaint was a dispute with his former law partner about fees, resulting in Shaw reporting his prac *54 tice of making client advances to the Mississippi Bar. Shaw practiced with Mark Burton from June of 2000 until November 2001. In November of 2001, Burton left the partnership, took about 2,000 mass tort cases with him, and according to Shaw refused to agree on a fee split for the work that Shaw had performed on the cases. Shaw claimed Burton essentially blackmailed him and told Shaw that if he continued to pursue fees on the mass tort cases, then Burton would expose Shaw’s client advances. Accordingly, Shaw elected to self report the client advances to the Mississippi Bar.
ANALYSIS
I. Whether the Complaint Tribunal rendered appropriate sanctions against Frank H. Shaw, Jr.
¶ 4. The standard of review applied to disciplinary actions is as follows:
When this Court reviews a disciplinary action from the Complaint Tribunal, the evidence is examined de novo. Rule 9.4 of the Rules of Discipline for the Mississippi Bar; Steighner, 548 So.2d at 1297. The Court may impose sanctions either more or less severe than the Complaint Tribunal, although deference is given to that body’s findings due to its exclusive opportunity to observe the demeanor and attitude of the witnesses, including the attorney, which is vital in weighing the evidence. Mississippi State Bar v. Strickland, 492 So.2d 567 (Miss.1986).
Broome v. Miss. Bar, 603 So.2d 349, 353 (Miss.1992). There is no standard as to the punishment for particular misconduct, and each case is considered on a case-by-case basis. Miss. Bar v. Attorney HH, 671 So.2d 1293, 1295 (Miss.1996).
¶ 5. The Complaint Tribunal found that Shaw violated Mississippi Rule of Professional Conduct 1.8(e) which provides that:
A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, or administrative proceedings, except that:
1. A lawyer may advance court costs and expenses of litigation, including but not limited to reasonable medical expenses necessary to the preparation of the litigation for hearing or trial, the repayment of which may be contingent on the outcome of the matter; and
2. A lawyer representing a client may, in addition to the above, advance the following costs and expenses on behalf of the client, which shall be repaid upon successful conclusion of the matter.
a. Reasonable and necessary medical expenses associated with treatment for the injury giving rise to the litigation or administrative proceeding for which the client seeks legal representation; and
b. Reasonable and necessary living expenses incurred.
The expenses enumerated in paragraph 2 above can only be advanced to a client under dire and necessitous circumstances, and shall be limited to minimal living expenses of minor sums such as those necessary to prevent foreclosure or repossession or for necessary medical treatment. There can be no payment of expenses under paragraph 2 until the expiration of 60 days after the client has signed a contract of employment with counsel. Such payments under paragraph 2 cannot include a promise of future payments, and counsel cannot promise any such payments in any type of communication to the public, and such funds may only be advanced after due diligence and inquiry into the circumstances of the client.
Payments under paragraph 2 shall be limited to $1,500 to any one party by any lawyer or group or succession of lawyers during the continuation of any litigation *55 unless, upon ex parte application, such further payment has been approved by the Standing Committee on Ethics of the Mississippi Bar. An attorney contemplating such payment must exercise due diligence to determine whether such party has received any such payments from another attorney during the continuation of the same litigation, and, if so, the total of such payments, without approval of the Standing Committee on Ethics shall not in the aggregate exceed $1,500. Upon denial of such application, the decision thereon shall be subject to review by the Mississippi Supreme Court on petition of the attorney seeking leave to make further payments. Payments under paragraph 2 aggregating $1,500 or less shall be reported by the lawyer making the payment to the Standing Committee on Ethics within seven (7) days following the making of each such payment. Applications for approval by the Standing Committee on Ethics as required hereunder and notices to the Standing Committee on Ethics of payments aggregating $1,500 or less, shall be confidential.
¶ 6. The Mississippi Bar argues that a suspension of significant duration is the appropriate discipline to be imposed upon Shaw. Shaw argues that the thirty-day suspension imposed by the Tribunal is of significant duration and is an appropriate sanction for his conduct. In assessing a sanction in an attorney discipline case, we apply the following nine criteria: (1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) the protection of the public; (5) the sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer’s mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating and/or mitigating factors. Byrd v. Miss. Bar, 826 So.2d 1249, 1254 (Miss.2002).
¶ 7. Miss. R. Disc. 4(d) provides for a three-year statute of limitations on filing bar complaints. Accordingly, any consideration of misconduct before the three-year period is barred.
¶ 8. The nature of the conduct involved included 555 advances made to sixty-seven clients over a three-year period totaling more than $160,000. Approximately $30,000 of the advances were made after a settlement had been agreed upon, but before the settlement documents were executed and funds were available for distribution. A majority of the advances were for basic necessities such as utilities, rent, food, travel, medical, and other living expenses. Although Shaw made these advances to clients after an inquiry that the clients were in dire and necessitous circumstances, he failed to report these instances as required. “Payments under paragraph 2 aggregating $1,500 or less shall be reported by the lawyer making the payment to the Standing Committee on Ethics within seven (7) days following the making of each such payment.” M.R.P.C. 1.8(e). He also made some advances within the first sixty days of representation. Furthermore, some clients received advances exceeding $1,500, without seeking approval by the Standing Committee on Ethics, all of which is prohibited by Rule 1.8(e). The Tribunal specifically found no violation of the stated interest to protect against “buying clients.”
¶ 9. There is a need to deter similar conduct of making advancements without reporting them. The reporting requirements of Rule 1.8(e) seek to “avoid improper use of what should be a humanitarian act.” In re G.M., 797 So.2d 931, 934-35 (Miss.2001). By allowing restricted ways of making client advances, the danger of bidding wars among attorneys is limited. *56 Id. at 934. Furthermore, advancing large sums of money to clients may frustrate a party’s willingness or ability to settle and/or cause a conflict of interest for the attorney. Id. at 935. Here, the Tribunal found that the failure to enforce Rule 1.8 would lead to “wholesale violation and disregard of that rule,” and would, “encourage the concept of buying clients.”
¶ 10. The Bar argues that a suspension of significant duration is called for in order to preserve the dignity and the reputation of the profession. Part of the overall purpose of attorney discipline is to protect the reputation of the bar. Rogers v. Miss. Bar, 731 So.2d 1158, 1172 (Miss. 1999). As the Tribunal found, “it is absolutely necessary that ... the Rules of Professional Conduct be enforced to preserve the dignity and the reputation of the profession and let the public know that there are consequences when the professional rules are not complied with.”
¶ 11. This Court must also consider the protection of the public and the actual or potential injury that occurred. The Tribunal found that there was no real or actual harm to the public in the case sub judice, but it expressed concern over the potential for harm if attorneys were allowed to give the impression that they have a revolving credit plan for prospective clients. “One of our duties, as a self governing profession is to protect the public interest.” Id. at 1172. No evidence was presented that Shaw’s clients were made promises of any future payments. Nor does the evidence presented give the impression that Shaw had a revolving credit plan for his clients.
¶ 12. This Court must also look at sanctions imposed in similar cases when analyzing the appropriate disciplinary action for Shaw. This is a case of first impression concerning client advances and the violation of Rule 1.8(e) since the 1999 amendments. This Court was however posed with the question of whether or not advances for medical insurance premiums fell under the purview of the new amendments. In re G.M., 797 So.2d 931 (Miss. 2001). In the case of In re G.M., the attorneys were seeking approval to advance $401.39 per month for medical insurance premiums on behalf of G.M., a client who received serious injuries, was unable to work, and was notified that his health insurance benefits would cease if he failed to pay the monthly premiums needed to maintain the coverage. Id. at 933. This Court ruled that these expenses could be advanced in dire and necessitous circumstances. Id. at 935. Prior to the 1999 amendments, the only advancements allowed were for court costs and expenses of litigation.
¶ 13. In Mississippi Bar v. Attorney HH, 671 So.2d 1293 (Miss.1995), decided before the current amendments, this Court issued a private reprimand to a lawyer who guaranteed loans of over $4,000 for his client, and who gave advances for personal living expenses of the client of which $600 was used to pay child support payments. Id. at 1294. This Court issued a private reprimand to Attorney HH for making advances, at a time when client advances were strictly prohibited. However, this Court notes that Shaw’s violations were not limited to one client as in Attorney HH. Instead, Shaw repeatedly advanced money to 67 clients, over a three-year period, wherein he made 555 advances totaling $161,810.65.
¶ 14. Gex v. Mississippi Bar, 656 So.2d 1124 (Miss.1995), also dealt with the issue of client advances before the 1999 amendments to Rule 1.8. In Gex, the Mississippi Bar filed two formal complaints involving separate, unrelated incidents against Gex. 656 So.2d at 1125. The first tribunal de *57 termined that Gex, violated Rules of Professional Conduct 1.15(b) and 8.4(a), (c), (d), regarding a note and deed of trust taken on the sale of real property to Jacqueline A. Vidrine. Id. The second tribunal determined Gex violated conduct rules 1.3,1.4(a), 1.8(e) and 8.4(c) in the representation of his client, Paul Cromer. Id. Gex also engaged in conduct demonstrating dishonesty, fraud, deceit or misrepresentation and conduct prejudicial to the administration of justice. Id. Gex was disbarred by the Tribunal on the Vidrine incident and was suspended for one year by the tribunal that considered the Cromer matter, which included the violation of Rule 1.8(e). Id. This Court held that the actions by the Tribunals were justified and reasonable and would normally have been separately upheld by the Court, but that the two matters together comprised a “clear pattern of misconduct,” and disbarred Gex for his actions. Id. at 1133. Shaw argues his actions here do not warrant such harsh sanctions, because Gex committed violations of a more serious nature, did not self report, and presented no mitigating factors in defense of either matter.
¶ 15. As there is a lack of Mississippi precedent for the appropriate punishment for this type of infraction, we look to the precedent of other jurisdictions. The Bar argues that Florida Bar v. Rue, 643 So.2d 1080 (Fla.1994), and Shea v. Virginia State Bar, 236 Va. 442, 374 S.E.2d 63 (1988), are persuasive. In Rue, the attorney received a ninety-one day suspension and two years probation for: providing financial assistance to clients, sharing fees with non-lawyers, engaging in business transaction with clients without the required disclosure, and seeking and collecting prohibited fees. 643 So.2d at 1082. Unlike Rue, the violations in the case sub judice do not involve any other improper conduct other than advancing money to clients. However, Rue does not appear to contain the kind of systematic repetitive conduct that is involved here. In Shea, an attorney received a ninety-day suspension for advancing money to a client who faced eviction, and who had difficulty meeting other household expenses. 374 S.E.2d at 64. However, Shea’s prior disciplinary violations, including a private reprimand, and a previous suspension, were aggravating factors which the court considered when ultimately determining that the conduct warranted a ninety day suspension. Id. at 65. Shaw, however, has had no prior disciplinary action taken against hi
¶ 16. The Supreme Court of Arizona suspended an attorney for 1 year who engaged in improper solicitation of clients (after learning of a violent gas explosion in Kingman, Arizona) and who advanced cash and purchased automobiles for these clients. In re Carroll, 124 Ariz. 80, 602 P.2d 461 (1979). However, the court in Carroll did note that the advances were made for humanitarian purposes, in that court’s view. Id. at 467.
¶ 17. The Tribunal found that the duty involved in this case was the duty to avoid conflicts with clients. Furthermore, the Tribunal made a specific finding that no conflicts arose, because rather than confronting clients about reimbursement, Shaw often absorbed the losses himself.
¶ 18. Next we must evaluate the lawyer’s mental state. There is no evidence that Shaw suffers from any type of decreased mental capacity. The Tribunal however found that Shaw violated the rules even though he knew it was wrong. Shaw stated the following with respect to his violation of the rule:
Judge Patten: So what you’re saying is you were willing to assume the risk of getting caught violating the rule?
Shaw: Yes sir.
*58 Judge Patten: To help your client.
Shaw: Absolutely Sir.
¶ 19. Finally, this Court must consider aggravating or mitigating factors in determining the appropriate sanctions to impose on Shaw. These include whether an ongoing wilful pattern of conduct occurred, Shaw’s prior disciplinary record, whether Shaw has taken steps to prevent future violations, and Shaw’s reputation in the community. See Byrd, 826 So.2d at 1255.
¶ 20. Although the Tribunal found that Shaw knowingly violated the rule, Shaw self-reported these violations to the bar. However, as the Bar argues, the self reporting of the violations came only after an argument over fees arose and after his former law partner had threatened disclosure. The repeated, ongoing nature of the violations, coupled with Shaw’s knowing violation of the Rule are aggravating factors to be considered by this Court when determining the appropriate discipline to impose. See Byrd, 826 So.2d at 1255 (wherein this Court considered as an aggravating factor in determining sanctions against Byrd, Byrd’s repeated wilful failure to file tax returns over a twelve-year period).
¶ 21. However, this Court must also consider mitigating factors, which include the following: Shaw disclosed all advances made, to whom, and disclosed the amounts of each advance. Shaw did not make any advances subsequent to reporting the violations to the Bar and cooperated fully with the Bar in their investigation into these matters. Shaw has never had any prior disciplinary action taken against him and has never been accused of any deceitful act in his practice. Shaw has also spent a great deal of time and money[1] defending this matter. Shaw also appears to enjoy a good reputation and has served his country in the military since 1981 and now is a Judge Advocate in the Mississippi Air National Guard.
¶ 22. The Tribunal’s sanction of thirty days is too lenient given Shaw’s ongoing and intentional violation of Rule 1.8(e). However, in assessing the appropriate sanction against Shaw, this Court notes that Shaw’s conduct did not amount to buying clients, but rather a violation of the reporting requirements of Rule 1.8(e). These reporting requirements are necessary to curtail improper financial assistance-given by attorneys to their clients. Without these reporting requirements, attorneys would have an unfettered ability to exploit the benevolent and humanitarian purposes of Rule 1.8(e). The reporting requirements must be adhered to in order to preserve the dignity of the profession and to protect the attorney-client relationship. “The goal of attorney discipline is protection of the public and the administration of justice, maintenance of appropriate professional standards, and deterrence of similar conduct.” Id. at 1255. Because of the substantial and numerous violations by Shaw, this Court suspends Frank H. Shaw, Jr., from the practice of law for 90 days.
¶ 23. FRANK H. SHAW, JR. IS SUSPENDED FROM THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR A PERIOD OF NINETY (90) DAYS FROM AND AFTER THE DATE OF THIS OPINION.
SMITH, C.J., COBB, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, P.J. AND DIAZ, J., NOT PARTICIPATING.

. The record reflects over $40,000.