913 So.2d 963 (2005)
The MISSISSIPPI BAR
v.
Paula E. DRUNGOLE.
No. 2004-BD-00714-SCT.
Supreme Court of Mississippi.
April 28, 2005.
*964 Michael B. Martz, Jr., Adam B. Kilgore, attorneys for appellant.
Jerry Askew, attorney for appellee.
EN BANC.
*965 GRAVES, Justice, for the Court.
¶ 1. This bar discipline case is before the Court en banc on formal complaint filed by the Mississippi Bar (hereinafter "the Bar") seeking discipline against Paula E. Drungole under the provisions of Rule 13 of the Rules of Discipline for the Mississippi State Bar. Drungole is a licensed attorney in this State and is subject to the disciplinary jurisdiction of this Court.
¶ 2. On or about January 13, 2003, the United States Bankruptcy Court for the Northern District of Mississippi entered a consent order enjoining Drungole from: (1) the practice of law before any bankruptcy court in the United States; (2) representing or giving legal advice to any entity concerning the bankruptcy laws of the United States; and (3) any and all acts that constitute the practice of law on a bankruptcy issue. The actions which prompted the bankruptcy court's order are set forth below.
¶ 3. Drungole, a practicing bankruptcy attorney, filed a bankruptcy petition styled In Re: Camesha L. Robertson, No. 02-12292, in the United States Bankruptcy Court for the Northern District of Mississippi on April 12, 2002. On the previous day, she filed a required disclosure of compensation stating that she had not received compensation. Upon filing the petition, Drungole paid $100 of the $200 filing fee and filed an application to pay the remainder in installments. The court issued an order authorizing Drungole to pay the remainder in one payment of $100 no later than May 20, 2002. Drungole failed to pay the remainder by the specified date. On June 25, 2002, the clerk of the Bankruptcy Court notified the United States Trustee of the delinquent fee. The Trustee filed notice of potential dismissal on July 2, 2002, but Drungole never responded and never paid the $100 remainder owed.
¶ 4. The Trustee filed a motion for sanctions, to examine fees and for other relief against Drungole. The Trustee alleged two violations concerning the Federal Rules of Bankruptcy Procedure and submitted evidence along with his motion. Money order receipts revealed that Drungole's client gave her $425[1] on March 30, 2002, to satisfy filing fees and a portion of Drungole's attorney fees. The Trustee alleges that Drungole accepted the $425 before satisfying the clerk's filing fee. Rule 1006 of the Federal Rules of Bankruptcy Procedure requires payment of the filing fees in full before the attorney may accept fees. Also, in the fee disclosure statement required by Rule 2016 of the Federal Rules of Bankruptcy Procedure, Drungole stated that she had received no compensation, when in fact she had received $425 for filing fees and compensation. Drungole knew that possession of those funds made her ineligible to request installment payments; nonetheless, she filed the request. To address Drungole's misconduct, the Trustee requested that the bankruptcy court impose any and all appropriate sanctions, including disgorgement of any and all fees paid to her in connection with this matter, certification of the matter to district court for imposition of the appropriate sanctions, and the disbarment of Drungole from the practice of law in federal court.
¶ 5. Filed with the Bar's formal complaint are certified copies of the motion for sanctions to examine fees and the order entered by the United States Bankruptcy Court for the Northern District of Mississippi, *966 which constitute conclusive evidence of Drungole's guilt.
¶ 6. The Mississippi Bar sent a summons and notice to respondent at her last known address with a copy of the formal complaint attached. Drungole, by and through counsel, timely filed a response.
¶ 7. The Bar recommends the imposition of reciprocal discipline by this Court, including the payment of all costs and expenses associated with this action. Drungole contends that she should not be further punished and that the Bar's complaint against her should be dismissed.

DISCUSSION
¶ 8. This Court has exclusive and inherent jurisdiction in matters pertaining to attorney discipline. R. Discipline Miss. State Bar 1(a); Asher v. Miss. Bar, 661 So.2d 722, 727 (Miss.1995); Gex v. Miss. Bar, 656 So.2d 1124, 1127 (Miss.1995);. Furthermore, this Court conducts a de novo review in bar disciplinary matters. Gex, 656 So.2d at 1127; Miss. Bar v. Attorney R., 649 So.2d 820, 824 (Miss.1995).
¶ 9. Typically, the Bar bears the burden of showing that an attorney's actions constitute professional misconduct by "clear and convincing evidence." Goodsell v. Miss. Bar, 667 So.2d 7, 9 (Miss.1996). However, in Mississippi Bar v. Felton, 699 So.2d 949, 951 (Miss.1997), an order of suspension from another court was found to be "conclusive evidence" of guilt, and the sole issue to be determined before the Court was the extent of final discipline. This Court accepted a federal district court's suspension of an attorney as "conclusive proof of his guilt of failure to follow court orders and protect his clients' interest" and held that "reciprocal sanctions are in order under Rule 13." Miss. Bar v. Alexander, 669 So.2d 40, 41 (Miss.1996). The Bar filed this complaint under the auspices of Rule 13 of the Rules of Discipline for the Mississippi State Bar which states:
Rule 13. DISCIPLINE IN ANOTHER JURISDICTION
When an attorney should be subjected to disciplinary sanctions in another jurisdiction, such sanction shall be grounds for disciplinary action in this state, and certification of such sanction by the appropriate authority of such jurisdiction to the Executive Director of the Bar or to the Court, shall be conclusive evidence of the guilt of the offense or unprofessional conduct on which said sanction was ordered, and it will not be necessary to prove the grounds for such offense in the disciplinary proceeding in this state. The sole issue to be determined in the disciplinary proceeding in this state shall be the extent of the final discipline to be imposed on the attorney, which may be less or more severe than the discipline imposed by the other jurisdiction.
Procedure
(13.1) Upon receipt by the Executive Director of a certified copy of disciplinary sanctions imposed by the bar or a court in another jurisdiction or by a Mississippi trial court or local bar association upon an attorney subject to these rules, the Executive Director shall immediately docket same as a complaint, charge or grievance and shall immediately forward the matter to Complaint Counsel. Complaint Counsel shall present the certified copies of the disciplinary action of the other court or Bar to the Court wherein the sole issue to be determined shall be the extent of final discipline to be imposed on the attorney in this state, which discipline may be less or more severe than the discipline imposed by the other jurisdiction.
*967 R. Discipline Miss. State Bar 13. Conclusive evidence has already been established; and therefore, it is therefore unnecessary for this Court to engage in additional fact-finding.
¶ 10. Pursuant to Rule 13, the Bar admits that the punishment imposed by this Court could be more or less severe than that imposed by the bankruptcy court, Mississippi Bar v. Gardner, 730 So.2d 546 (Miss.1998) (citing Mississippi Bar v. Pels, 708 So.2d 1372 (Miss.1998)), and makes no specific recommendation other than for Drungole to be "disciplined by this Court with all costs and expenses connected herewith taxed against her."
¶ 11. In her response to the Bar's formal complaint, Drungole asserts one general affirmative defense that allegedly explains her conduct. Drungole argues, as she did in the consent order, that "she does not admit to any wrongdoing and does not admit any facts set forth in [the consent order]," but "consented to being enjoined from the practice of law for the time period stated in the Order" in order to "prevent further embarrassment and humiliation." Drungole alleges now, as she did when the motion for sanctions was filed against her, that the "allegations set forth in the Motion occurred due to mistake and inadvertence and was not done by a deliberate and intentional act on behalf of [her] to defraud the client or to deceive the Court."
¶ 12. We have held in attorney discipline matters that the purpose of discipline is not simply to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct. Miss. Bar v. Coleman, 849 So.2d 867, 875 (Miss.2002); Cotton v. Miss. Bar, 809 So.2d 582, 585 (Miss.2000); Miss. State Bar Ass'n v. A Miss. Attorney, 489 So.2d 1081, 1084 (Miss.1986). This Court applies a proportionality requirement to Bar discipline cases. Pitts v. Miss. State Bar Ass'n, 462 So.2d 340 (Miss.1985). Suspensions from the practice of law have been reserved for instances where some form of dishonesty has significantly harmed the client, or constituted a fraud on a court, or both. Mathes v. Miss. Bar, 637 So.2d 840 (Miss.1994). This Court is free to evaluate the discipline imposed on an attorney and on review modify punishment as needed to best serve the interests of the Bar and the public. Parrish v. Miss. Bar, 691 So.2d 904, 907 (Miss.1996); Miss. State Bar v. Blackmon, 600 So.2d 166, 173 (Miss.1992).
¶ 13. Factors which should be considered when imposing discipline include, but are not limited to the following:
(1) the nature of the misconduct involved;
(2) the need to deter similar misconduct;
(3) the preservation of the dignity and reputation of the legal profession;
(4) the protection of the public; and
(5) sanctions imposed in similar cases.
Pels, 708 So.2d at 1375 (citing A Mississippi Attorney, 489 So.2d at 1083-84). The American Bar Association also lists guidelines to consider, which include:
(1) the duty violated;
(2) the lawyer's mental state; and
(3) the actual or potential injury resulting from misconduct, and the existence of aggravating or mitigating factors.
Id.

Nature of the Misconduct
¶ 14. Drungole made material misrepresentations to the U.S. Bankruptcy Court, violated the Bankruptcy court's order to have the filing fee accompany the petition, and violated Rule 1006 of the Federal Rules of Bankruptcy Procedure which requires *968 payment of the filing fees in full before the attorney may accept fees.

Need to Deter Similar Conduct
¶ 15. The sanction we impose in the case sub judice reflects this Court's position that this conduct among members of the Bar is wholly inappropriate and is sanctionable under the Mississippi Rules of Professional Conduct.

Sanctions Imposed in Similar Case
¶ 16. Under the facts in this case, the consent order and injunction issued by the bankruptcy court enjoined Drungole from the practice of law effective January 13, 2003. Further, the injunction was to remain in full force and effect to February 12, 2003, and terminate on that date only if Drungole timely paid to the bankruptcy court clerk the sum of $100.00, paid the debtor the sum of $375.00 and submitted proof to the bankruptcy court that these funds had been paid and the required hours of continuing legal education had been completed. In her response, Drungole agreed to and subsequently paid the court, disgorged herself of the fees from the client and completed twelve hours of continuing legal education in bankruptcy law. While the bankruptcy court's order was conditioned upon Drungole performing the aforementioned tasks, the resulting length of her suspension before the bankruptcy court was only for a period of thirty days.
¶ 17. In assessing sanctions for reciprocal attorney discipline cases, we give deference to the sanction imposed by the foreign jurisdiction. After all, this Court takes the findings of the foreign jurisdiction as conclusive evidence of professional misconduct. See R. Discipline Miss. State Bar 13. In accepting the findings of the foreign jurisdiction, our focus on the due process protections afforded the attorney must never waiver. See generally Selling v. Radford, 243 U.S. 46, 51, 37 S.Ct. 377, 61 L.Ed. 585 (1917). An attorney who is the subject of a disciplinary complaint is entitled to fundamental due process protections throughout the course of the proceedings. In re Rokahr, 681 N.W.2d 100, 108 (S.D.2004). Thus, it seems only appropriate that we afford deference to the sanctions imposed by the foreign jurisdiction. If the attorney was afforded full or partial substantive and/or procedural due process in the foreign jurisdiction, then the foreign jurisdiction would have had the best opportunity to consider the testimony of the witnesses, examine the lawyer's mental state, determine the existence of aggravating and/or mitigating factors, and assess the credibility of the witnesses. To this end, we have routinely issued sanctions equal to or less than the sanction imposed by the foreign jurisdiction in reciprocal attorney discipline cases. See Miss. Bar v. Attorney BBB, 890 So.2d 882 (Miss.2004) (held that a private reprimand was an appropriate disciplinary sanction in Mississippi, after an attorney had received an informal admonishment in Tennessee for failing to comply with Tennessee's pro hac vice rule before practicing law in Tennessee); Miss. Bar v. Barry, 890 So.2d 870 (Miss.2004) (a nine-month suspension was warranted as disciplinary action in Mississippi, for conduct for which the attorney received a nine-month suspension in Illinois, i.e., making misrepresentations to courts and to clients that he had obtained expert opinions supporting two medical malpractice claims and one legal malpractice claim he had filed, and filing breach of contract action against clients, in which he falsely alleged that clients had not allowed him to file an appeal after dismissal of medical malpractice action); Miss. Bar v. Daniels, 890 So.2d 872 (Miss.2004) (two-year suspension was appropriate disciplinary sanction in Mississippi, for conduct for which *969 attorney had been suspended in Connecticut for two years, i.e., lack of diligence in adoption, divorce, child custody, contempt, and immigration matters, lack of communication with clients, and failure to provide clients with prompt accountings and refunds of unearned fees); Miss. Bar v. Caldwell, 890 So.2d 855 (Miss.2004) (suspension for 90 days, which was the sanction imposed on attorney in Tennessee, was appropriate reciprocal discipline in Mississippi, for attorney's conduct in failing to submit a sentencing hearing transcript in a criminal appeal); Miss. Bar v. Thompson, 797 So.2d 197 (Miss.2000) (disbarment was warranted for attorney who agreed to resign his license to practice law in another state based on his criminal convictions in federal district court for transportation of stolen money and for structuring transactions in violation of currency reporting requirements); Miss. State Bar v. Young, 509 So.2d 210 (Miss.1987) (a one-year suspension was issued by this Court for an attorney's role in a bribery scheme after the United States Court of Appeals for the Fifth Circuit issued a one-year suspension for the same offense).
¶ 18. We note that in reciprocal attorney discipline cases, a majority of our sister states have elected to impose sanctions equal to or less than those issued by the foreign jurisdiction with few exceptions. See People v. Distel, 76 P.3d 473, 474 (Colo.O.P.D.J. 2003) (held that disbarment was appropriate sanction in reciprocal discipline action, after attorney was disbarred in Arizona for neglect, knowing conversion of client funds, trust account violations, and making knowing misstatements of material fact to a tribunal); Statewide Grievance Comm. v. Tartaglia, 2003 WL 22904558 (Conn.Super.Ct. Nov.24, 2003) ("Most courts extend the reciprocity doctrine to include a practice of imposing a disciplinary sanction that normally will be the same in operative length and severity as that imposed in the first jurisdiction. An inappropriately lenient or severe sanction, however, will not be copied. Connecticut follows that majority view."); In re Drager, 846 A.2d 992, 993-94 (D.C.2004) (held in reciprocal attorney discipline cases, there is a general presumption that discipline in the District of Columbia should mirror the sanction imposed by the first jurisdiction); In re Rickabaugh, 661 N.W.2d 130, 132 (Iowa 2003) (held that attorney should be disbarred after concluding that prior disbarment order in Nebraska was essentially an identical sanction for purposes of Iowa's Rules of Discipline); In re Montgomery, 863 So.2d 499, 500 (La.2003) (held the imposition of reciprocal discipline against respondent based upon the Texas judgment is clearly appropriate under the facts of this case); Attorney Grievance Comm'n v. Fountain, 379 Md. 44, 838 A.2d 1238, 1246 (Md.2003)("We are prone. ...., but not required..... to impose the same sanction as that imposed by the state in which the misconduct occurred."); In re Power, 3 A.D.3d 21, 24, 768 N.Y.S.2d 455 (N.Y.App.Div.2003) ("In reciprocal proceedings, this Court normally defers to the sanction determination made by the state where the misconduct occurred."); In re Rokahr, 681 N.W.2d 100, 108 (S.D.2004) (recognizes South Dakota's rule of employing the identical sanction imposed by the foreign jurisdiction unless: (i) the procedure in the other jurisdiction was so lacking in notice or opportunity to be heard as to constitute a due process violation; (ii) there was such an infirmity of proof establishing the misconduct that this Court cannot reasonably rely upon them; or (iii) the misconduct justifies substantially different discipline here); In re Welker, 100 P.3d 1197, 1199-1200 (Utah 2004) (holding that in reciprocal discipline proceeding the Rules of Lawyer Discipline and Disability *970 do not allow Utah to impose a sanction more severe than that imposed in the other state); In re Maloney, 276 Wis.2d 1, 686 N.W.2d 148, 149 (2004) (holding that in attorney discipline proceeding attorney was subject to the identical sanction imposed upon him by the foreign jurisdiction based upon Wisconsin's ethical rules).
¶ 19. Because this Court takes the cold record of the foreign jurisdiction as conclusive, we hold that in reciprocal attorney discipline cases, deference must be afforded to the foreign jurisdiction's findings. Clearly Rule 13 provides that this Court can impose whatever sanction it deems appropriate in reciprocal attorney discipline cases. However, Rule 13 is not an invitation to disregard logic, reason or common sense. Only under extraordinary circumstances should there be significant variance from a sanction imposed by the foreign jurisdiction. The case sub judice does not present any extraordinary circumstances which compel, justify or support variance from the foreign jurisdiction's sanction.
¶ 20. We deem proper and hereby order a thirty-day suspension of Paula E. Drungole from the practice of law in Mississippi; that she shall be reinstated to practice upon expiration of the thirty-day period and pursuant to the provisions of Rule 12 of the Rules of Discipline of the Mississippi. Further, all costs of this disciplinary proceeding are taxed against Drungole.
¶ 21. PAULA E. DRUNGOLE IS SUSPENDED FROM THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR A PERIOD OF THIRTY DAYS FROM THE DATE OF THIS OPINION; SHE SHALL ONLY BE REINSTATED UPON EXPIRATION OF THIRTY DAYS FROM THE DATE OF THIS OPINION PURSUANT TO RULE 12 OF THE MISSISSIPPI RULES OF DISCIPLINE.
WALLER, P.J., EASLEY, CARLSON, AND DICKINSON, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY SMITH, C.J., AND COBB, P.J. DIAZ, J., NOT PARTICIPATING.
RANDOLPH, Justice, Concurring in Part and Dissenting in Part.
¶ 22. "Deceit, whether visited on a court or an attorney who is an officer of the court or a private citizen, should be dealt with in a firm manner. To allow an attorney to act in such a manner without imposing appropriate sanctions is tantamount to condoning acts of deceit." Miss. Bar v. Robb, 684 So.2d 615, 622 (Miss.1996).
¶ 23. I agree with the majority in suspending Paula E. Drungole from the practice of law in this State because of her false representation to the United States Bankruptcy Court for the Northern District of Mississippi that she had received no compensation, thus gaining eligibility to pay her filing fees in installment payments, and her false representation that she was in compliance with bankruptcy procedures requiring payment of filing fees in full before accepting compensation.
¶ 24. Drungole agreed to the entry of a consent order and injunction issued by the United States Bankruptcy Court for the Northern District of Mississippi, which enjoined her from practicing bankruptcy law for one month.[2] However, Drungole should be suspended for a minimum of five *971 additional months.[3]See generally Miss. Bar v. Shah, 749 So.2d 1047 (Miss.1999) (imposing six-month suspension on attorney suspended from practicing before bankruptcy courts because of improperly transferring client money in violation of order); Miss. Bar v. Felton, 699 So.2d 949 (Miss.1997) (suspending attorney for six months for failing to comply with orders entered by the United States Bankruptcy Court); Mathes v. Miss. Bar, 637 So.2d 840 (Miss.1994) (attorney's acceptance of fees from two bankruptcy clients without first petitioning bankruptcy court for approval as required by bankruptcy law and later signing court order agreeing to tender fees to bankruptcy trustee within 90 days but failing to do so warrants six-month suspension, rather than one-year suspension.).
¶ 25. This Court is free to evaluate the discipline imposed on an attorney and on review modify punishment as needed to best serve the interests of the Bar and the public. Parrish v. Miss. Bar, 691 So.2d 904, 907 (Miss.1996); Miss. State Bar v. Blackmon, 600 So.2d 166, 173 (Miss.1992).
¶ 26. The majority opines: "In assessing sanctions for reciprocal attorney discipline cases, we give deference to the sanction imposed by the foreign jurisdiction." This is contrary to prior decisions of this Court.[4]See Miss. Bar v. Gardner, 730 So.2d 546, 547 (Miss.1998) ("Although the [foreign jurisdiction's] decree is conclusive as to the facts underlying the offense, this Court considers disciplinary matters de novo and must judge each case on its own merits when it comes to the extent of sanctions."). Importantly, there is no exact standard as to what punishment for particular conduct ought to be and each case is considered on a case-by-case analysis instead of giving deference to the actual sanction imposed by the foreign jurisdiction. Myers v. Miss. State Bar, 480 So.2d 1080, 1087 (Miss.1985); A Miss. Attorney v. Miss. State Bar, 453 So.2d 1023 (Miss.1984). See generally Miss. Bar v. Pels, 708 So.2d 1372, 1374 (Miss.1998) ("In determining an appropriate sanction, however, it is inherent within the language of Rule 13 that this Court is not bound by those findings of the foreign jurisdiction which go to the sanction imposed."); Miss. Bar v. Strauss, 601 So.2d 840, 845 (Miss.1992) ("Mindful that this Court is in no way bound to impose the same sanction as that imposed by another jurisdiction, this Court finds that the ... violation... constitutes a serious failure of the duty ... to the legal system and that such a violation warrants a serious sanction.").
¶ 27. We do take the finding of guilt of the foreign jurisdiction as conclusive evidence and afford it deference because Rule 13 requires that we "shall" do same. However, Rule 13 makes no statement and offers no inference that this Court is required to give, as the majority suggests, deference to the actual sanction imposed. See R. Discipline Miss. State Bar 13. Not only does Rule 13 not address giving deference to the sanction, the majority's failure to cite prior cases of this Court to *972 support its newly created rule repudiates the unambiguous language of Rule 13, which states that the sole issue for this Court to decide is the extent of final discipline, which may be more or less severe than that imposed by the foreign jurisdiction. See R. Discipline Miss. State Bar 13.
¶ 28. The majority errs in failing to cite controlling cases, for this Court's holdings have been clearly opposite. Therefore, by adopting this flawed reasoning, the majority should necessarily overrule all cases to the contrary and then rewrite Rule 13.
¶ 29. Furthermore, without citing prior case law or a rule, the majority opines: "Only under extraordinary circumstances should there be significant variance from a sanction imposed by the foreign jurisdiction." This opinion is not supported by our decisions. See Gardner, 730 So.2d 546 (attorney suspended for two years with six months suspended in foreign jurisdiction and suspended for one year by this Court); Shah, 749 So.2d 1047 (attorney suspended by bankruptcy court for two years and this Court reduced attorney's suspension in this State to six months); Pels, 708 So.2d 1372 (declining to impose reciprocal disbarment and instead imposing a thirty-day suspension); Felton, 699 So.2d 949 (attorney suspended for two years by bankruptcy court, but only six months by this Court); Strauss, 601 So.2d 840 (where the foreign jurisdiction imposed a three year suspension, and this Court ordered only a three month suspension). Not one of these cases supports the majority's holding that this Court should give great deference to the sanction imposed by the foreign jurisdiction, but rather clearly exhibits that this Court in the past has exercised its discretionary power to impose punishment as it deems fit in order to protect the public confidence and faith in the integrity of the entire Bar.
¶ 30. This proposition is also completely at odds with Rule 13. Rule 13 does not state that we "shall" give deference to the actual sanction imposed by the foreign jurisdiction. Leaving this Court with only the sole determination as to what the discipline shall be in this State, the drafters of the Rules evidently deemed it sufficiently important to require this Court to grant deference to the foreign jurisdiction's findings in regard to guilt, but did not deem it appropriate for this Court to be submissive to a foreign jurisdiction regarding the sanction imposed and to abrogate not only this Court's inherent right to determine the discipline, but its statutory and rule imposed duty. See Miss.Code Ann. § 73-3-341 (Rev.2004); R. Discipline Miss. State Bar 1.
¶ 31. The majority seeks to buttress its newly created standard by relying on cases[5] from other jurisdictions. However, according to the Rules of Discipline for the Mississippi State Bar, this Court retains the exclusive jurisdiction to deal with bar disciplinary matters and unambiguously retains the power to impose discipline as it deems fit. See R. Discipline Miss. State Bar 1, 13. The majority relies on cases from other jurisdictions notwithstanding the fact that there is no necessity or valid reason in doing so, as this Court has its own clearly established body of law and Rule 13 which are directly on point with the issue presented in the case sub judice. *973 Assuming arguendo, this State's law regarding sanctions to be imposed by this Court represents a minority view, this State has enacted its own body of law, and Rule 13 remains the law to which we are bound, until such time as Rule 13 is repealed or amended and all cases in support thereof are explicitly overruled. This Court is not bound by the law of foreign jurisdictions.
¶ 32. Our Court should not focus on foreign jurisdiction punishment or foreign jurisdiction laws, but rather should rely and adhere to the principle of stare decisis. This Court should not create a new standard and blindly adhere to what a foreign jurisdiction imposes, especially when there is no evidence that the same exact rules or law are part of the foreign jurisprudence. Rather, this Court should rely upon its own body of law to ensure predictability and consistency. See Myers, 480 So.2d at 1087: A Miss. Attorney, 453 So.2d at 1023.
¶ 33. This Court is duty-bound to honor Rule 13 and prior case law when disciplining an attorney. Consequently, I cannot agree with either the majority's logic or reasoning, as both ignore prior case law and the clear language contained in Rule 13, which states: "The sole issue to be determined in the disciplinary proceeding in this state shall be the extent of the final discipline to be imposed on the attorney, which may be less or more severe than the discipline imposed by the other jurisdiction." (Emphases added).
¶ 34. The majority opines: "Clearly Rule 13 provides that this Court can impose whatever sanction it deems appropriate. However, Rule 13 is not an invitation to disregard logic, reason and common sense." The majority's assault on stare decisis suggests that this Court's prior rulings disregard logic, reason and common sense. I cannot join in this attack.
¶ 35. Let us not forget that Drungole intentionally made more than one false representation to the bankruptcy court, thereby prejudicing her client, the court and the public's confidence in the Bar. Making false representations to any court is an issue that this Court needs to sternly address in order to protect clients and courts, deter similar future conduct, and protect the public confidence in the Bar's integrity. Imposing a mere 30-day suspension does not, in my opinion, send an unequivocal message that this Court will not condone such conduct. In light of the circumstances in the case sub judice, I conclude that the purposes of attorney discipline  preservation of the dignity and reputation of the legal profession and the protection of the public  are properly served by a five-month suspension. See Haimes v. Miss. Bar, 601 So.2d 851, 854 (Miss.1992) ("primary purpose of disciplinary action is to vindicate the reputation of the bar in the eyes of the public").
¶ 36. For this reason, I respectfully concur in part and dissent in part.
SMITH, C.J., AND COBB, P.J. JOIN THIS OPINION.
NOTES
[1] Subsequent to the filing of the case, on or around June 14, 2002. Paula E. Drungole received an additional $150 from the debtor.
[2] Importantly, Drungole's injunction from practicing before the bankruptcy courts was more akin to a contempt proceeding, not a bar disciplinary matter. Bar disciplinary matters are the exclusive province of this Court. Miss. Bar v. Thompson, 797 So.2d 197, 198 (Miss.2000).
[3] Although six months is the appropriate suspension for her conduct, I recognize the hardship associated with such a period of suspension and I acknowledge Drungole's suspension from practicing before any bankruptcy court for 30 daysher primary practice area. Therefore, I would only suspend Drungole for five additional months, resulting in a total suspension of six months, which is consistent with our prior decisions. Additionally, a five-month suspension would not require her to take and pass the Mississippi Bar Examination before being admitted to practice again in this State.
[4] The majority's excursion into a due process discussion in support of its deference holding was not an issue raised by Drungole.
[5] People v. Distel, 76 P.3d 473, 474 (Colo.O.P.D.J. 2003); Statewide Grievance Comm. v. Tartaglia, 2003 WL 22904558 (Conn.Super.Ct. Nov.24, 2003); In re Drager, 846 A.2d 992, 993-94 (D.C.2004); In re Rickabaugh, 661 N.W.2d 130, 132 (Iowa 2003); In re Montgomery, 863 So.2d 499, 500 (La.2003); Attorney Grievance Comm'n v. Ayres-Fountain, 379 Md. 44, 838 A.2d 1238, 1246 (2003); In re Power, 3 A.D.3d 21, 24, 768 N.Y.S.2d 455 (N.Y.App.Div.2003); In re Rokahr, 681 N.W.2d 100, 108 (S.D.2004); In re Welker, 100 P.3d 1197, 1199-1200 (Utah 2004); In re Maloney, 276 Wis.2d 1, 686 N.W.2d 148, 149 (2004).