KITCHENS, Justice,
for the Court:
¶ 1. On June 20, 2013, the Mississippi Bar filed a formal complaint against Scott David Beal alleging that he “engaged in unprofessional and unethical conduct ... evincing unfitness for the practice of law, which constitutes legal grounds for the imposition of discipline.” Nine months before, on September 17, 2012,- the Supreme Court of Illinois had entered an order suspending Beal from practice in that state for a total of two years. Beal currently is suspended from the practice of law in Mis *182 sissippi for nonpayment of dues, and was on suspension in this State at the time of the conduct giving rise to the present complaint.[1] In light of the suspension of Beal’s license to practice law in Illinois, the Mississippi Bar seeks reciprocal discipline in this state and also asks that Beal be required to pay the cost of its having filed and prosecuted the complaint against him.
FACTS
¶ 2. ■ The Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (“ARDC”) charged Beal with neglecting five client matters and settling two of those matters in the absence of client approval. After failing to appear at a hearing on June 7, 2011, the Hearing Board of the ARDC found that Beal had exhibited a “pattern of misconduct” which demonstrated “a repeated disrespect for his clients’ legal rights”; consequently, the Hearing Board recommended that he be suspended for two years. On appeal before the Review Board of the ARDC, Beal asserted through counsel that the recommendation of the Hearing Board was too harsh. Nevertheless, the Review Board affirmed the findings of misconduct of the Hearing Board and recommended to the Illinois Supreme Court that Beal be suspended for two years.
¶ 3. According to the Review Board, Beal attested in a sworn statement that his wife had moved from Illinois to North Carolina in January 2007 for employment. Beal and the couple’s children followed her to North Carolina in March 2007. Beal continued his Illinois law practice, commuting between Chicago and North Carolina, but he took a job with a North Carolina law firm in August 2008; however, he failed to inform his Illinois clients of his move to North Carolina. Beal also indicated that he had been suffering from “bouts of anxiety,” some of which he stated were “debilitating” and prevented his going to his law office, in spite of his awareness of pressing client matters. At the time he provided the sworn statement, in February 2010, Beal had not sought treatment from a mental health professional, but was taking anxiety medication.
¶ 4. The charges against Beal in Illinois included five counts of misconduct with regard to five separate client matters, each of which is set forth in turn.
¶ 5. Count I. Beal agreed to represent John Yankura, who had been injured while driving his employer’s truck in November 1999. After Beal filed a complaint in October 2001, the court dismissed Yankura’s case for want of prosecution when Beal failed to appear for a status hearing. Beal’s subsequent motion to vacate the dismissal resulted in reinstatement of the case. Following the completion of discovery in November 2005, the court set December 5, 2005, as the date for trial. Beal failed to inform Yankura of the trial date. Thereafter, Beal filed a voluntary motion to dismiss the case, which the court granted. Yankura was informed neither that Beal had filed the motion nor that the case had been dismissed. Beal filed a second complaint in June 2006, which was dismissed for want of prosecution in April 2007, following Beal’s absence from another status hearing. The court again reinstated the case in July 2007, following a second motion to vacate the dismissal. The court quashed service of summons on the defendant in September 2007 and, in March 2008, the case again was dismissed for want of prosecution. Beal filed a motion to vacate the dismissal a third time, *183 but failed to appear to present it to the court. In August 2008, the court granted Beal’s third motion to vacate the dismissal. In October 2008, Beal failed to appear a fourth time, and the court again dismissed for want of prosecution and subsequently granted Beal’s fourth motion to vacate the dismissal.
¶ 6. Beal attempted in October 2008 to serve the defendant, his only effort to do so since the court had quashed service in September 2007. In March 2009, the court granted the defendant’s motion to dismiss, filed since the plaintiff had failed to exercise reasonable diligence with regard to service of process. Beal neither filed a response to the motion to dismiss nor did he inform the client of the defendant’s motion or the dismissal of the case with prejudice. Yankura and his wife testified that they had attempted to contact Beal by telephone more than fifty times, and that their letters, sent by fax and certified mail, had gone unanswered. They eventually learned that Beal had moved to North Carolina, but he never informed them of that fact. Beal had assured the Yankuras that their lawsuit would provide them more than one million dollars; nevertheless, Yankura, who was completely unable to work after the accident due to serious injuries, received nothing. As a result, he and his wife depleted their savings in order to live and, according to the Review Board, have numerous unpaid medical bills.
¶ 7. Count II. The facts giving rise to Count II involve a personal injury suit against Pure Laser Hair Removal & Treatment Clinics, Inc., filed by Catherine Tribolet and her then-husband James. Beal agreed to substitute as counsel for the Tribolets in June 2006, after which he moved voluntarily to dismiss the complaint. Beal refiled the complaint later that month. Beal then filed a motion to vacate a mandatory arbitration order in February 2009, which the court granted; but Beal failed to appear for the scheduled status hearing. Consequently, the court dismissed the case for want of prosecution. Beal filed a motion to vacate the dismissal in March 2009, which the court granted in November 2009; but the Tribolets’ case was dismissed for want of prosecution a second time in December 2009. Beal never informed the Tribolets about the dismissal, nor did he take any action to reinstate the case.
¶ 8. Count III. In September 2005, Beal commenced representation of Emilia Ritchie following injuries she suffered in an automobile accident, filing a complaint on Ritchie’s behalf in September 2006. Beal agreed to settle Ritchie’s claim for $25,000, though he never obtained her authorization to do so. The settlement agreement called for an agreed order dismissing Ritchie’s complaint with prejudice, which was entered in January 2009. However, Beal never informed Ritchie that her complaint had been dismissed. When Beal asked Ritchie to sign a release, she refused. Ritchie attempted to telephone Beal at least once to discuss the status of her case, between January 2009 and November 2009, but her call went unanswered and unreturned.
¶ 9. Count IV. In June 2006, Beal commenced representation of Rodney Chester, who had suffered injuries in a truck accident. He filed a complaint on Chester’s behalf in June 2008. When the court dismissed Chester’s case for want of prosecution, following Beal’s failure to appear at a status hearing, Beal made no subsequent effort to reinstate Chester’s case, nor did he inform Chester of the dismissal. Chester’s repeated calls to Beal to discuss the case between January 2009 and February 2010 went unanswered.
*184 ¶ 10. Count V. Beal commenced representation of Donnelly in 2003 with regard to injuries Donnelly had suffered in a car crash. One of the attorneys in Beal’s firm filed a complaint in October 2004. In June 2006, Beal obtained a voluntary dismissal and, shortly thereafter, refiled the complaint, without informing Donnelly. The court set the trial date for May 5, 2009. The day before trial, May 4, 2009, Beal agreed to settle Donnelly’s claim for $25,000, neither having notified Donnelly of the settlement offer nor having obtained his authorization to settle. Pursuant to the settlement agreement, the case was dismissed on May 5, 2009. Beal informed Donnelly that his case had settled for $30,000. Donnelly’s attempts to contact Beal to discuss the settlement were unsuccessful; and, upon contacting counsel for the defendant, Donnelly learned that the settlement actually was $25,000, not $30,000, as Beal had represented. Beal contacted Donnelly and acknowledged that the settlement was only $25,000, but informed Donnelly that he would receive $30,000. Donnelly then agreed to sign the settlement release, which specified Donnelly’s settlement amount at $25,000. The defendants remitted a settlement check made out to Donnelly and the Beal Firm, at Beal’s request, in October 2009. As of July, 2010, Beal had communicated with neither Donnelly nor opposing counsel concerning finalization of the settlement. Consequently, opposing counsel instructed the defendant’s insurer to stop payment on the check. As of October 2010, Beal had made no effort to distribute the settlement proceeds to Donnelly.
¶ 11. The Hearing Board found, and the Review Board affirmed, that Beal had engaged in the following misconduct prior to January 1, 2010, based on the Illinois Rules of Professional Conduct of 1990:
a.failing to consult with a client as to the means by which the objectives of representation are to be pursued, in violation of Rule 1.2(a) of the 1990 Rules of Professional Conduct (Counts III, V);
b. failing to act with reasonable diligence and promptness in representing a client, in violation of Rule 1.3 of the 1990 Rules of Professional Conduct (all Counts);
c. failing to keep a client reasonably informed about the status of a matter, in violation of Rule 1.4(a) of the 1990 Rules of Professional Conduct (all Counts);
d. failing to make reasonable efforts to expedite litigation consistent with the interests of the client, in violation of Rule 3.2 of the 1990 Rules of Professional Conduct (all Counts);
e. failing to promptly notify the client upon receiving property in which the client has an interest, promptly [to] deliver funds that the client is entitled to receive, and [to] render a full accounting, in violation of Rule 1.15(b) of the 1990 Rules of Professional Conduct (Count V);
f. engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(a)(5) of the 1990 Rules of Professional Conduct (Count V);
g. engaging in conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(a)(5) of the 1990 Rules of Professional Conduct (all Counts); and
h. engaging in conduct which tends to defeat the administration of justice or brings the courts or the legal profession into disrepute, in violation of [Illinois] Supreme Court Rule 770 (all Counts).
¶ 12. The Hearing Board found, and the Review Board affirmed, that Beal had en *185 gaged in the following misconduct after January 1, 2010, based on the Illinois Rules of Professional Conduct of 2010:
a. failing to act with reasonable diligence and promptness in representing a client, in violation of Rule 1.3 of the 2010 Rules of Professional Conduct (Counts IV, V);
b. failing to keep a client reasonably informed about the status of a matter and promptly [to] comply with reasonable requests for information, in violation of Rule 1.4(a) of the 2010 Rules of Professional Conduct (Counts IV, V);
c. failing to promptly notify the client upon receiving property in which the client has an interest, promptly [to] deliver funds that the client is entitled to receive, and [to] render a full accounting in violation of Rule 1.15(d) of the 2010 Rules of Professional Conduct (Count V);
d. engaging in conduct which tends to defeat the administration of justice or brings the courts or the legal profession into disrepute, in violation of [Illinois] Supreme Court Rule 770 (Counts IV, V).
¶ 13. On September 17, 2012, the Supreme Court of Illinois “approve[d] and confirm[ed]” the Review Board’s Report and Recommendation affirming the Report and Recommendation of the Hearing Board, and suspended Beal from the practice of law for two years.
¶ 14. The Mississippi Bar seeks discipline of Beal pursuant to Rule 13 of the Rules of Discipline for the Mississippi State Bar and requests that the expenses of filing and prosecuting the formal complaint be assessed to him. Beal has not filed an answer or any response to the complaint against him.
STANDARD OF REVIEW
¶ 15. This Court exercises “exclusive and inherent jurisdiction of matters pertaining to attorney discipline.” M.R.D. 1(a). Moreover, “we review matters of attorney discipline under a de novo standard of review.” Miss. Bar v. Inserra, 38 So.3d 605, 607 (Miss.2009) (citing Miss. Bar v. Alexander, 669 So.2d 40, 41 (Miss.1996)).
DISCUSSION
¶ 16. Rule 13 of the Rules of Discipline of the Mississippi State Bar provides that, when an attorney is sanctioned by a sister jurisdiction, “certification of such sanction by the appropriate authority of such jurisdiction ... shall be conclusive evidence of the guilt of the offense or unprofessional conduct on which said sanction was ordered, and it will not be necessary to prove the grounds for such offense in the disciplinary proceeding in this state.” M.R.D. 13. As such, the “sole issue to be determined in the disciplinary proceeding in this state shall be the extent of the final discipline to be imposed on the attorney, which may be less or more severe than the discipline imposed by the other jurisdiction.” Id.
¶ 17. This Court generally affords deference to the sanction imposed by the foreign court: “[o]nly under extraordinary circumstances should there be significant variance from a sanction imposed by a foreign jurisdiction.” Inserra, 38 So.3d at 607 (quoting Miss. Bar v. Drungole, 913 So.2d 963, 968, 970 (Miss.2005)). “This Court may suspend an attorney where he has engaged in ‘some form of dishonesty [that] has significantly harmed his client, or constituted a fraud on the court, or both.’ ” Id. (quoting Drungole, 913 So.2d at 967). This Court established the following nine criteria for determining the sane- *186 tions to be imposed in a reciprocal discipline case:
(1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) protection of the public; (5) the sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer’s mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating and/or mitigating factors.
Id. (quoting Miss. Bar v. Ishee, 987 So.2d 909, 911-12 (Miss.2007)). Each criterion need not be addressed separately, “so long as each is taken into consideration.” Hodges, 949 So.2d 683, 686 (Miss.2006).
¶ 18. As in Inserra, this Court finds that the Report and Recommendation, both of the Hearing Board and of the Review Board, “directly or implicitly considered each of the above-referenced criteria.” Inserra, 38 So.3d at 607. The Review-Board concisely summarized Beal’s misconduct as follows:
[Although he performed some work on his client’s cases, he abruptly abandoned his clients without giving them notice or information that would alert them that they should seek new counsel. As a result, the Yantaras’ personal injury case was dismissed with prejudice and they suffered substantial financial harm. Tribolet’s and Chester’s cases were dismissed as well, without their knowledge. Beal committed the additional misconduct ... of settling two client matters without his clients’ consent and misrepresenting the amount of Donnelly’s settlement. To make matters worse, due to Beal’s refusal to communicate with his clients and opposing counsel, the settlements were delayed or not finalized. In one instance, opposing counsel sent Beal a $25,000 settlement draft but Beal never deposited it. Beal completely disregarded his clients’ interests and caused significant harm. A lengthy suspension is necessary to protect the public and the integrity of the legal profession.
As in Inserra, “the report’ clearly shows that [Beal] violated a duty to his clients and the profession through his acts and omissions.” Inserra, 38 So.3d at 607-08. Further, the report states that Beal “acted negligently and knowingly and [] caused injury with regard to each count.” Id. at 608. The Hearing Board and the Review Board relied on “analogous caselaw” to conclude that Beal should be suspended. Id. Additionally, both the Hearing Board and the Review Board explicitly considered Beal’s mental health.[2] Finally, the Review Board noted that “we have considered that Beal has no prior discipline but give this factor little weight in comparison with the serious misconduct and factors in aggravation.”
¶ 19. This State’s case law supports reciprocal suspension of Beal. In Mississippi Bar v. Dolan, this Court held that a one-year suspension from the practice of law, one year of probation, and imposition of costs for disciplinary action constituted *187 an appropriate reciprocal sanction where the attorney had violated the following Tennessee Rules of Professional Conduct, comparable to the counterpart Mississippi Rules of Professional Conduct: “1.1 Competence; 1.2 Scope of the Representation and the Allocation of Authority Between the Lawyer and Client; 1.3 Diligence; 1.4 Communication; 1.5 Fees; 1.15 Safekeeping Property; 1.16 Declining and Terminating Representation; and 8.4 Misconduct.” Miss. Bar v. Dolan, 987 So.2d 921, 924 (Miss.2008).
¶20. In the present case, the Illinois Supreme Court, in affirming the Report and Recommendation of the Hearing Board and the Review Board, held that Beal had violated the following Illinois Rules of Professional Conduct, which, as in Dolan, are substantially similar to their Mississippi counterparts: 1.2 Scope of Representation and Allocation of Authority Between the Lawyer and Client; 1.3 Diligence, 1.4 Communication; 1.15 Safekeeping Property; and 8.4 Misconduct. While the Illinois Supreme Court did not find that Beal had violated Rules 1.5 and 1.16, it did find that he had violated Rule 3.2 Expediting Litigation.
¶ 21. In Mississippi Bar v. Barry, another reciprocal-discipline case, this Court held that suspension for nine months constituted an appropriate reciprocal sanction. Miss. Bar v. Barry, 890 So.2d 870, 871 (Miss.2004). There, the Illinois Supreme Court suspended Barry because Barry, among other instances of misconduct, had misrepresented to clients “that he had acquired expert opinions as to causation in a medical malpractice suit when he in fact had not,” resulting in dismissal. Id.
¶ 22. Indeed, the judicial record of this State suggests that where reciprocal discipline is concerned, the discipline imposed by this Court closely mirrors the discipline imposed by the sister jurisdiction. See Miss. Bar v. Ishee, 987 So.2d 909 (Miss.2007); Miss. Bar v. Hodges, 949 So.2d 683 (Miss.2006); Miss. Bar v. Drungole, 913 So.2d 963 (Miss.2005); Miss. Bar v. Alexander, 669 So.2d 40 (Miss.1996). This Court finds neither aggravating nor mitigating circumstances under the facts of the present case which might warrant a significant departure from the procedure articulated in the above cases.
¶ 23. Furthermore, this Court recently held that the one-year suspension imposed by the Arizona Supreme Court constituted an appropriate sanction. Inserra, 38 So.3d at 606. As in this case, Inserra’s conduct impacted more than one client and involved lack of reasonable diligence, failure to communicate with clients, failure to comply with court orders, blatant misrepresentations, and failure to pay a $1,000 sanction ordered by the United States Court of Appeals for the Ninth Circuit. Id. This Court likewise suspended Inserra from the practice of law for one year, but “because Inserra is currently suspended for nonpayment of his enrollment fees, this one-year period of suspension shall begin to run upon payment of said fees.” Id. at 608. As did Inserra, the present case involves an out-of-state attorney currently suspended from the practice of law in Mississippi for nonpayment of enrollment fees.
CONCLUSION
¶ 24. Our precedent establishes that the two-year suspension imposed by the Illinois Supreme Court is an appropriate sanction in view of Beal’s egregious conduct. Therefore, this Court hereby suspends Beal from the practice of law before all Mississippi courts for a period of two years. In light of Beal’s current suspension for nonpayment of Mississippi Bar enrollment fees, such suspension shall commence upon payment of all applicable Mississippi fees and dues. Beal is re *188 quired to pay all costs associated with the filing and prosecution of this complaint.
¶ 25. SCOTT DAVID BEAL SHALL BE SUSPENDED FROM . THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR A PERIOD OF TWO (2) YEARS; SAID SUSPENSION SHALL BEGIN TO RUN UPON PAYMENT OF ENROLLMENT FEES.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.

. See Miss.Code Ann. § 73-3-127 (Rev.2012). This Court has disciplinary jurisdiction of Beal. Miss. Bar v. Inserra, 929 So.2d 884 (Miss.2006) (“While Inserra is not a member of the Bar in good standing, he is subject to the disciplinary jurisdiction of this Court.”).

. Both the Hearing Board and the Review Board considered Beal's possible struggle with mental illness. The Hearing Board noted, "there is evidence in the record that Respondent has some mental health issues. Because there is little evidence establishing the extent of these issues, we believe Respondent should be required to prove that these issues either have been addressed or will not affect his ability to represent clients....” The Review Board stated that, "[t]he need to assess fitness is particularly important in this case in light of Beal’s statement that ‘debilitating anxiety’ prevented him from doing legal work. Because Beal chose not to appear, there was no evidence regarding his current mental state or whether he has obtained appropriate treatment for his anxiety.”