¶ 1. This matter is before the Court, en banc , on the amended formal complaint filed by the Mississippi Bar against Yvonne L. Hughes, a licensed Mississippi attorney. The Bar requests reciprocal discipline based on Hughes's disbarment by the Supreme Court of Louisiana on May 11, 2007, and asks that this Court order Hughes to pay the costs and expenses of filing the formal complaint and amended formal complaint.
¶ 2. On April 22, 2004, the Supreme Court of Louisiana issued a decision removing Hughes from judicial office based on the recommendation of the Judiciary Commission of Louisiana ("Commission"). In re Judge Yvonne L. Hughes , 874 So.2d 746 (La. 2004). The court's opinion related that Hughes had been a judge of the Orleans Parish Juvenile Court, Division "C." Id. at 752. The Commission had filed fifteen formal charges against Hughes based on her activities as an attorney and three formal charges based on her activities as a judge. Id. at 753, 757. After the Commission's two-part hearing on the charges, it recommended that Hughes be removed from judicial office and that the record should be forwarded to the Lawyer Disciplinary *1285 Board for consideration of whether she should retain her license to practice law. Id. at 758-59.
¶ 3. The Supreme Court of Louisiana, which has exclusive original jurisdiction in judicial disciplinary proceedings, found that the charges filed by the Commission were substantiated by clear and convincing evidence. Id. at 752. That court issued a forty-five page opinion, with an unpublished appendix, detailing its findings of Hughes's judicial misconduct and her unprofessional conduct as an attorney and judicial candidate. Id. at 746-91. Because the record evinced an extraordinary pattern of misconduct, the Louisiana court concluded, "Judge Hughes has demonstrated a blatant and incorrigible inability to conform to the rules imposed on any aspect of her career B be it notary, attorney, candidate, or judge." Id. at 790.
¶ 4. The court found that, in Hughes's capacity as a practicing attorney, she repeatedly had taken money from clients and had failed to perform the services for which she had been retained, and then she refused to refund the fees. Id. at 785. Out of the nine charges involving Hughes's failure to account to former clients and/or to refund unearned fees, the court singled out several incidents for discussion as particularly representative of Hughes's misconduct. Id. at 775 n.16.
¶ 5. In one such incident, Hughes accepted representation of Donald Jones, who paid her $2,500 to handle his criminal case. Id. at 778. But when Hughes failed to appear at Jones's guilty plea hearing, Jones was forced to hire his codefendant's attorney to represent him, despite the fact that he believed this created a conflict of interest. Id. at 779. In her defense, Hughes claimed that she had taken part in plea negotiations and had arranged for the codefendant's counsel to represent Jones at the guilty plea hearing. Id. Not only did Jones deny any knowledge of that arrangement, but the assistant district attorneys involved with the plea bargain had no recollection of Hughes's involvement. Id. Hughes did not refund the unearned fees. Id.
¶ 6. In another matter, Troy Dews paid Hughes a $2,500 retainer to represent his nephew on criminal charges in federal district court in Mississippi. Id. at 780. Hughes agreed she would investigate the charges and visit the nephew, who was incarcerated in Jackson, Mississippi. Hughes neither made an appearance at the arraignment nor requested a continuance. Id. at 780. Hughes did travel to Jackson, but never visited the nephew; instead, she attended a gospel concert and visited an ill friend. Id. Having discerned that Hughes had done nothing in the case, Dews spent six weeks begging for a refund, after which Hughes sent him a partial refund check that was returned twice for insufficient funds. Id. At the hearing, Hughes conceded that she probably owed Dews money and that she never had given him an accounting. Id. Hughes explained she had not repaid Dews because doing so would not have stopped the disciplinary proceedings. Id. The court described Hughes's excuse as "especially disturbing" and found that her misconduct had brought Louisiana's attorneys and judiciary into disrepute. Id. at 781.
¶ 7. In another Louisiana incident, twenty-one days prior to assuming office as a juvenile court judge, Hughes accepted representation of Dorian Ferguson in a criminal matter pending in Jefferson Parish. Id. at 782. Ferguson's family paid Hughes $700 toward the representation. Id. Hughes appeared as counsel of record; but after she assumed judicial office, she abandoned the representation. Id. at 783. When Ferguson contacted Hughes after she had failed to appear at a motions hearing, she said she had referred the matter to another *1286 law firm that had agreed to handle the case for the same total fee Hughes had negotiated, $1500. Id. But when the family contacted the law firm, it demanded $3500. And Hughes refused to refund the $700 she had received from Ferguson's family. Id. at 783-84.
¶ 8. Next, the court addressed Hughes's misconduct regarding her acceptance of a $1500 retainer to represent Lana Turner's son on a second degree murder charge. Id. at 784. Hughes spent $500 of the retainer on an investigator; but when she assumed judicial office, she abandoned the representation without informing the client or his mother. Id. at 784. Without obtaining permission from the Turners, she arranged for another attorney to take over the case. Id. When Lana Turner demanded a refund, Hughes refused to refund any portion of the fee. Id. at 785.
¶ 9. The Supreme Court of Louisiana found that these and numerous similar charges involving Hughes's refusal to refund unearned fees or to account to clients had been established by clear and convincing evidence. Id. at 775 n.16. Its description of the other similar charges was contained in an unpublished appendix. Id. at 791. The court found many other instances of attorney misconduct, including that Hughes had failed to maintain a client's files and turn them over to a new attorney, which had jeopardized the case. Id. at 782. The supreme court found that, in connection with that matter, she had ignored a subpoena to appear in court, which the supreme court deemed "egregious, absolutely unacceptable, and totally intolerable." Id. Additionally, the court determined that Hughes had held herself out as a notary public after her notarial commission had been suspended. Id. at 777-78. The court further found that, as a judicial candidate, Hughes had committed repeated, egregious campaign finance reporting violations resulting in the assessment of fines and fees in the amount of $49,400. Id. at 775-77.
¶ 10. After reviewing the voluminous evidence of Hughes's attorney misconduct, the Louisiana court said the following:
The evidence clearly and convincingly establishes that as an attorney, Judge Hughes time and time again took money from people who could ill afford to pay it, did minimal or no work to earn it, and then refused to refund monies she clearly had not earned. Preying upon her clients' lack of education and lack of sophistication in legal matters, Judge Hughes either ignored or cavalierly dismissed complaints that she had failed to perform the services for which she was retained, explaining that her work was all done behind the scenes and that her fees were all earned. However, she failed to produce any records that might substantiate her claims and failed to account to her clients for their hard-earned dollars.
Such conduct is inexcusable. Judge Hughes' documented failure to account to her clients, to return unearned fees even after acknowledging that refunds were owed, to appreciate the significance of holding herself out as a notary when she holds no notary commission, and to abide by the basic rules of law that govern all citizens, not just lawyers and judges (such as campaign finance laws and valid subpoenas) is persistent and public conduct prejudicial to the administration of justice that warrants discipline. We find the Lawyer Charges were proved by clear and convincing evidence and establish a pattern of misconduct relevant to our determination of the ultimate sanction to be imposed.
Id. at 785.
¶ 11. Examining her actions in her capacity as a juvenile court judge, the Supreme Court of Louisiana found that *1287 Hughes had abused her parole authority by releasing at least nine hundred adult arrestees from jail in a two-year period. Id. at 762. Further, the court found that Hughes had associated with convicted felons and had allowed several such persons actually to work at the court although they were not court employees. Id. at 765. For example, Hughes had permitted several convicted criminals, not employed by the court, to use the court's computers to type judgments; she also gave them access to confidential juvenile records. Id. The court found that Hughes had created a vast backlog in her preparation of judgments, causing unnecessary delays and even dismissals, and that she had failed to hold court at regular hours, which negatively had impacted parties, witnesses, and attorneys. Id. at 771. Additionally, the court found, Hughes had held court by telephone and had tape recorded proceedings when no court reporter was available; and she allowed staff members to "preside" in her absence. Id. at 772. The court also found that Hughes had failed to cooperate with the Commission's investigation by failing to respond to subpoenas and by claiming some of her case files had been destroyed by a fire although the purported fire had occurred before she had received the cases. Id. at 786.
¶ 12. The supreme court found that Hughes had violated "Canons 1, 2 A, 2 B, 3 A(1), 3 A(3), 3 A(4), 3 A(7), 3 B(1), and 7 B(1)(a) of [Louisiana's] Code of Judicial Conduct, as well as the constitutional standard articulated in La. Const. art. V, § 25 (C)." Id. at 787. Because of Hughes's repeated wilful misconduct relating to her judicial duties that brought her judicial office into disrepute, conduct prejudicial to the administration of justice, pattern of administrative incompetence, failure to respect and abide by the rule of law, and persistent pattern of conduct violating the Code of Judicial Conduct and the Louisiana Constitution, the supreme court removed her from judicial office, reserving to the disciplinary board the right to institute lawyer disciplinary proceedings. Id. at 788-90.
¶ 13. On July 2, 2004, the Supreme Court of Louisiana, on consideration of a petition for interim suspension for threat of harm filed by the Office of Disciplinary Counsel, suspended Hughes on an interim basis pending further order of the court. In re Yvonne L. Hughes , 876 So.2d 772 (La. 2004). On March 17, 2005, the Office of Disciplinary Counsel ("ODC") filed formal charges against Hughes, alleging her conduct violated Rule 8.4(d) of the Rules of Professional Conduct. In re Yvonne L. Hughes , 956 So.2d 575, 576 (La. 2007). Hughes answered and denied any misconduct. Id. At a hearing on August 9, 2005, the ODC introduced the record and supreme court decision in Hughes's judicial disciplinary proceedings. Id. n.1. Hughes failed to appear. Id. Based on its review of the evidence, the hearing committee recommended that Hughes be disbarred permanently and, upon review, the disciplinary board agreed. Hughes did not object to the disciplinary board's recommendation. Id. On May 11, 2007, based on a review of the record and the disciplinary board's recommendation, the Supreme Court of Louisiana imposed permanent disbarment. Id. The court found that "[t]he seriousness and pervasiveness of respondent's misconduct in all aspects of her legal career readily demonstrate[s] that she is not fit to maintain her license to practice law." Id.
¶ 14. The Mississippi Bar has filed a formal complaint and an amended formal complaint against Hughes in this Court requesting reciprocal discipline based on her disbarment in Louisiana. "The Supreme Court of Mississippi ... has exclusive and inherent jurisdiction of matters pertaining to attorney discipline ...."
*1288 M.R.D. 1(a). Hughes is a licensed attorney in Mississippi and is subject to the disciplinary jurisdiction of this Court. Mississippi Rule of Discipline 13, which governs reciprocal discipline, provides:
When an attorney should be subjected to disciplinary sanctions in another jurisdiction, such sanction shall be grounds for disciplinary action in this state, and certification of such sanction by the appropriate authority of such jurisdiction to the Executive Director of the Bar or to the Court, shall be conclusive evidence of the guilt of the offense or unprofessional conduct on which said sanction was ordered, and it will not be necessary to prove the grounds for such offense in the disciplinary proceeding in this state. The sole issue to be determined in the disciplinary proceeding in this state shall be the extent of the final discipline to be imposed on the attorney, which may be less or more severe than the discipline imposed by the other jurisdiction.
M.R.D. 13.
¶ 15. Under Rule 13, the certified copy of the order of disbarment entered by the Supreme Court of Louisiana is "conclusive evidence of the guilt of the offense or unprofessional conduct on which said sanction was ordered." M.R.D. 13. This Court will not engage in further fact finding after another jurisdiction has imposed a sanction on an attorney. Miss. Bar v. Dorhauer , 38 So.3d 610, 612 (Miss. 2009). The only issue for determination is the extent of final discipline to be imposed upon the attorney in Mississippi. Id. (citing Miss. Bar v. Ishee , 987 So.2d 909, 911 (Miss. 2007) ).
¶ 16. This Court may impose a sanction that is more severe or less severe than that imposed by another jurisdiction. Dorhauer , 38 So.3d at 613. The Court applies nine criteria in determining the appropriate sanction in an attorney discipline case:
(1) The nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of dignity and reputation of the legal profession; (4) the protection of the public; (5) sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer's mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating or mitigating factors.
Miss. Bar v. Ogletree , 226 So.3d 79, 83 (Miss. 2015). "Each criterion need not be addressed separately, 'so long as each is taken into consideration.' " Miss. Bar v. Beal , 167 So.3d 180, 186 (Miss. 2014).
¶ 17. Under the reciprocity doctrine, "the sanction imposed in this State generally mirrors the sanction imposed in the sister state, absent extraordinary circumstances which compel, justify or support variance from the foreign jurisdiction's sanction." Miss. Bar v. Gilmer , 949 So.2d 689, 690 (Miss. 2006). An attorney subject to reciprocal discipline may present any mitigating factors the attorney wishes for the Court to consider in determining the sanction to be imposed. Id.
¶ 18. In imposing the sanction of permanent disbarment upon Hughes, the Supreme Court of Louisiana explicitly or implicitly considered all nine criteria utilized by this Court to determine an appropriate sanction for attorney misconduct. Hughes did not respond to the Mississippi Bar's motion for reciprocal discipline, and thus she has presented no mitigating factors for our consideration. No extraordinary circumstances compel, justify, or support variance from the sanction of disbarment imposed by the Supreme Court of Louisiana. Rather, the facts ascertained by the Supreme Court of Louisiana and the discipline imposed by that court after careful consideration of Hughes's conduct under the Rules of Professional Conduct fully support this Court's imposition of the *1289 sanction of disbarment. Therefore, based on the record before us, the Mississippi Rules of Discipline, and our case law, this Court finds that Yvonne L. Hughes shall be disbarred.
¶ 19. IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED as follows:
1. Yvonne L. Hughes is hereby permanently DISBARRED from the practice of law in the State of Mississippi;
2. This order shall constitute notice of permanent disbarment in this cause;
3. The Clerk of this Court shall forward an attested copy of this order to Yvonne L. Hughes and to the Executive Director of the Mississippi Bar;
4. Yvonne L. Hughes shall, within thirty days following entry of this order, notify clients and affected courts of her disbarment, properly disburse all funds she may hold in trust, and comply with all other requirements applicable to disbarred attorneys pursuant to Mississippi Rule of Discipline 11 ;
5. Yvonne L. Hughes shall, within forty-five days following entry of this order, file an affidavit with this Court stating that all of her clients have been notified of her disbarment and her consequent inability to practice law in Mississippi, and that she has complied fully with all requirements set forth in Mississippi Rule of Discipline 11, as well as the requirements of this order;
6. The Clerk of this Court shall immediately forward an attested copy of this order to the Clerks of the United States District Courts for the Northern and Southern Districts of Mississippi, the Clerk of the United States Court of Appeals for the Fifth Circuit, and the Clerk of the Supreme Court of the United States;
7. Costs and expenses of the formal complaint and amended formal complaint are hereby assessed against Yvonne L. Hughes.
SO ORDERED.
/s/ James W. Kitchens
JAMES W. KITCHENS, PRESIDING JUSTICE FOR THE COURT